**BECK–FROST CORPORATION v. FORD MOTOR CO.**

No. 5497.

Circuit Court of Appeals, Sixth Circuit.

Nov. 13, 1930.

C. B. Zewadski, of Detroit, Mich. (Whittemore, Hulbert, Whittemore & Belknap and William J. Belknap, all of Detroit, Mich., on the brief), for appellant.

F. P. Davis and G. E. Smith, both of Chicago, Ill. (Charles R. Halbert, of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, MACK, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Appellant brought its action in the court below for infringement of patent No. 1,395,-

893, issued November 1, 1921, on application of C. W. Beck, filed May 20, 1914, for a steering wheel and method of forming same. Claims 14, 18, and 20 to 25, inclusive, are in issue, and it is conceded that claims 18 and 20 are characteristic. These are printed in the margin.[1] Claim 14 is similar in its calls to claim 18, and claims 21 and 25, inclusive, are similar to claim 20.

With the development of the automobile it became desirable to devise a steering wheel of staunch yet cheap construction. A peculiarly cheap and strong spider for such a wheel was one made of stamped metal. Were this spider made in one piece, however, it would be more costly of manufacture, much less conveniently packed for shipment, and the outside ends of the spider arms could not easily be countersunk in the wooden rim. It thus became obvious that more satisfactory results could be secured by devising a demountable wheel which could be shipped "knocked down" and assembled at the automobile plant.

One feature of such a built-up wheel must of necessity be an operatively integral hub and spider, or the existence of firm union between the hub and spider arms. The general feature of being a built-up steering wheel was not broadly patentable, for it is not patentable to make in several parts that which had theretofore been made in one part, where no new function or useful characteristic of the wheel, as such, was thereby accomplished. The problem was, how to devise a spider which could be conveniently fitted to the preformed wooden rim, without sacrifice to strength. The particular means for accomplishing the desired result, if new and useful, might be covered as in combination, but not the general function of being built-up or capable of assembly. Vehicle wheels have been assembled or built up from time immemorial, and the analogy between such vehicle wheels and a steering wheel is too close

---

[1] 18. In a steering wheel, a spider comprising a member for engaging the stem of the steering post, spider arms having their inner ends abutting against said member, said ends and faces against which they abut being shaped to prohibit relative rotation, and a sheet-metal plate mounted upon an end portion of said member and rigidly engaging the spider arms.

20. A built-up steering wheel comprising a rim portion, a spider portion, said spider portion comprising a plurality of separate sheet metal spider arms extending from the rim portion to the central part of the wheel only and superimposed sheet metal stampings arranged on opposite sides of the inner ends of said arms, one of said stampings having a portion at the hub extending transversely to the main body portion of the stamping and each of said arms being directly secured to at least one of said stampings.

520

to permit of their being regarded as separate classifications of the arts or manufactures.

The Beck steering wheel shown in the patent consisted of a hub portion in which grooves were cut, perpendicularly to the axis, so as to produce a sunken bearing portion, for the inner ends of the spider arms, of square cross-section beneath the cylindrical surface of the hub; stamped metal spider arms cut at their inner ends to produce a 90-degree fork or angle, and thus adapted to fit over the corners of the square; separate plates designed to fit around and embrace the hub portion above and below the spider arms, and one of which was provided with a flange which was bent to overlap the other plate between such spider arms; and rivet holes both through the plates and the respective spider arms, enabling the latter to be riveted firmly to the plates and thus produce a functionally integral structure of spider arms and hub.

While claim 18 describes such a structure in broad language which would perhaps read upon any means in which relative rotation between the spider arms and hub portion was prevented by the "shaping" of these elements, claims 20 to 25, inclusive, would read upon, and cover, in a general way, all built-up steering wheels in which the spokes or spider arms are originally separate, and in which metal plates are utilized as the means of securing the spider arms against relative movement, whether the hub was constructed integrally with one of the plates (as in claim 20), or by whatever means relative rotation is prevented as between the ends of the spider arms and a separate hub portion (compare claim 21).

■ The use of metal plates as a means of firmly securing the spokes of a wheel against relative movement was exceedingly old in the art. See patents to McDowell, No. 265,124, September 26, 1882; to Avery, No. 413,884, October 29, 1889; to Allen, No. 730,581, June 9, 1903; and the Konigslow wheel, at least as early as 1902, to be hereafter discussed. Unlike the old patents for a horse-drawn vehicle wheel, in which a firm union between the bearing portion of the hub and the spokes is not so clearly necessary, it is essential in a steering wheel, and in the driving wheels of a self-propelled vehicle, to have the bearing portion of the hub securely anchored to the spokes or spider arms, and so "prevent relative rotation." This may be accomplished by any one of a large number of mechanical expedients. The hub and bearing portion may be made integral, and the

spider arms set into recesses provided therein and clamped in this position between separate plates; (2) the spider arms may be slotted and forked over rectangular pins provided on the hub and similarly there held; (3) the plates may be made integral with the hub and riveted to the spider arms at two or more places along their radii; (4) the ends of the spider arms may be shaped to form, when in place, an annulus or divided ring around the hub, thus preventing relative movement as between the arms, and the inner ends forming the annulus may be held in place by riveting to plates integral with the hub, or, with the annulus, themselves forming the hub; or, as in the plaintiff's patent, the inner ends of the spider arms may be so shaped on the abutting surface of the hub as to prevent relative rotation. We can see nothing patentable, nor indeed even highly ingenious, in the selection of one or the other of these various mechanical expedients to prevent relative rotation as between hub and spider arms. The method of designing the parts of a built-up steering wheel is clearly within the domain of selection open to the public, unless a built-up steering wheel is broadly patentable as such. This we have already said is not the case. Invention is not disclosed by claims 20 to 25, inclusive, but mere mechanical ability. Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438.

This position is emphasized, and another sufficient defense is presented to claims 20 to 25, inclusive, by the Konigslow steering wheel, which was in public use and the subject of publications more than ten years prior to Beck's application. Some suggestion has been made that the spider of the Konigslow wheel consisted of an integral piece of sheet metal, while the claims in suit called for separate or independent spider arms extending only to the central part of the wheel; but we are of the opinion that the evidence not only establishes the prior use of this wheel, with that degree of certainty and conviction that is required by the Barbed Wire Patent Case, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Deering v. Harvester Works, 155 U. S. 302, 15 S. Ct. 118, 39 L. Ed. 153, and other cases, but that it establishes with equal force that the spider was constructed of independent spider arms, flattened and extended at the hub end to form a divided annulus or ring about the steering post, and firmly held in such position by plates riveted thereto above and below the arms. In other words, the fourth mechanical expedient above mentioned was used by Konigslow. Since

claims 20 to 25, inclusive, read directly upon this prior use, such claims must be held invalid for this reason also.

Claims 14 and 18 depend for their validity upon having the inner ends of the spider arms abutting against the (separate) hub member, and upon these ends and the faces against which they abut being so shaped as to prohibit relative rotation. Even conceding that these claims are valid, which is exceedingly doubtful in view of what we have already said, the defendant's structure cannot be held to infringe. In Konigslow the bearing surface of the hub was made up of the inner circles of the two plates and of the annulus formed by the inner ends of the spider arms. All were firmly riveted together. The defendant more nearly approximates the Konigslow wheel than it does the device covered by claims 14 and 18. The plates of the defendant have extensions forming the hub, which the divided annulus, formed by the inner ends of the spider arms, encircles. The hub is thus formed of two parts, consisting of the two plates with their extensions, while Konigslow's hub consisted of three parts, an immaterial difference, but the inner ends of the defendant's spider arms and the hub portion upon which they abut are not "shaped" to resist or prohibit relative rotation between hub and arms. Such rotation is prevented solely by the spot-welding and riveting of the arms to the plates. Since the defendant's structure contains no equivalent to the shaping specifically required as an element of claims 14 and 18, the decision of the District Court that such claims were not infringed, as well as the finding of invalidity of claims 20 to 25 inclusive, must be

Affirmed.