**GENERAL MOTORS CORPORATION et al.
v. RUBSAM CORPORATION et al.**

No. 6137.

Circuit Court of Appeals, Sixth Circuit.
May 19, 1933.

Rehearing Denied June 29, 1933.

D. W. Cooper, of New York City (C. Blake Townsend, of New York City, on the brief), for appellants.

Fred Gerlach, of Chicago, Ill. (Justin R. Whiting, of New York City, on the brief), for appellees.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The defendants in the court below appeal from a decree finding that certain structures manufactured by them prior to April 21, 1928, embodied the inventions of Letters Patent No. 1,395,362, issued to Charles F. Rubsam, November 1, 1921, and Nos. 1,576,225 and 1,576,226, issued to the same patentee on March 9, 1926; that for that reason plaintiffs were entitled to recover stipulated royalties under a license agreement entered into May 4, 1923, and terminated April 21, 1928; and that the above-mentioned patents were

valid in respect to the claims in suit,[1] and were infringed by structures manufactured and sold by defendants after the termination of the license agreement.

■ Before considering the questions of the validity and infringement of the patents, we pause to inquire into the District Court's jurisdiction of the cause of action for the recovery of royalties under the canceled license agreement. No diversity of citizenship existed as in Ruby v. Ebsary Gypsum Co., Inc., 36 F.(2d) 244 (D. C. N. Y.), cited by plaintiffs in support of the claim of jurisdiction. The question of general equity jurisdiction, upheld by the court in Shaffer v. Carter et al., 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445, also relied upon by appellees, is not here involved. The issue is solely one of federal jurisdiction. In a number of cases this court has decided that where a patent is held valid and infringed, the unfair competition feature "arising out of that infringement may be included in an accounting for profits and damages, though the parties are citizens of the same state" [N. O. Nelson Mfg. Co. v. F. E. Myers & Bro. Co. (C. C. A.) 25 F.(2d) 659, 665; Detroit Showcase Co. v. Kawneer Mfg. Co. (C. C. A.) 250 F. 234, 239; K-W Ignition Co. v. Temco Electric Motor Co. (C. C. A.) 243 F. 588, 591, and cases there cited], and we do not think that we need again pass upon the soundness of this doctrine, for it seems to us that the joinder in one bill of two entirely separate and distinct causes of action, under Equity Rule 26 (28 USCA § 723), even assuming that both are within the general equity jurisdiction of the court, is a very different matter from allowing relief in a patent infringement suit for unfair competition "arising out of that infringement" which is the subject of suit, and to which the unfair competition is therefore wholly incidental. In the first case there is, in substance, the consolidation of two separate actions; in the second case this feature is absent. In the one, there should be federal jurisdiction of both causes of action; in the other, jurisdiction of the primary cause of action is probably enough.

■■ No contention is made on behalf of the plaintiffs that there was, or could have been, infringement by any of the defendants prior to the cancellation of the license agreement. An action for the recovery of royalties, it is also clear, is a suit to enforce a contract, and "the rule is well settled that, if the suit be brought to enforce or set aside a contract, though such contract be connected with a patent, it is not a suit under the patent laws, and jurisdiction of the circuit court [now district court] can only be maintained upon the ground of diversity of citizenship." Excelsior Wooden Pipe Co. v. Pacific Bridge Co., 185 U. S. 282, 285, 22 S. Ct. 681, 682, 46 L. Ed. 910. In the case just cited it was also held (page 290 of 185 U. S., 22 S. Ct. 681) that if the licensee fails to observe the conditions of its license pertaining to the payment of royalties, precisely the present case, the licensor must resort to the state courts if he would maintain a suit for breach of the contract, unless, of course, there be diversity of citizenship. Again, in Geneva Furniture Mfg. Co. v. S. Karpen & Bros., 238 U. S. 254, 259, 35 S. Ct. 788, 789, 59 L. Ed. 1295, the court expressly held that so much of the bill as charged the defendants with contributory infringement and sought relief on that ground presented a case arising under the patent laws, of which the District Court should have taken jurisdiction; but that the other portions of the bill, stating causes of action in tort and for breach of contract, did not arise under the patent laws, and as to them the federal court had no jurisdiction. The language of the court upon the subject of jurisdiction is peculiarly applicable to the present case: "It hardly needs statement that the jurisdiction as limited and fixed by Congress cannot be enlarged or extended by uniting in a single suit causes of action of which the court is without jurisdiction with one of which it has jurisdiction. Upon this point the rule otherwise prevailing respecting the joinder of causes of action in suits in equity must, of course, yield to the jurisdictional statute." To the same effect see Hurn v. Oursler, 53 S. Ct. 586, 77 L. Ed. —— (decided April 17, 1933); Vose v. Roebuck Weather Strip & Wire Screen Co., 210 F. 687 (D. C. N. Y.); General Baking Co. v. Shults Bread Co., 288 F. 954 (D. C. N. Y.). We conclude that the District Court erred in retaining jurisdiction of the cause of action for breach of contract and accounting under the license agreement.

## II.

■ Since, under the authorities cited, the court below had jurisdiction of the patent infringement aspect of the case, we turn now to a consideration of the patents. All cover automobile wheel structures of the demountable rim type. Prior to Rubsam it had long been common practice to mount the rim upon

---

[1] Claims 4, 5, and 6 of patent No. 1,395,362; claims 7, 8, and 11 of patent No. 1,576,225; and claim 1 of patent No. 1,576,226.

the wheel by first passing the inwardly-extending valve stem of the pneumatic tire, carried on the rim, through a hole which was provided in the felly for that purpose, tilting the inner side of the rim, next to the vehicle, upon the inner flange of a metal felly band, and swinging the tire so pivoted transversely of the wheel and into vertical position. Clamps were then adjusted to hold the rim and tire securely to the felly. It was also well known that in performing this operation the rim should be centered, as nearly as could be done, upon the wheel, and that.if there was radial clearance and the clamps were not carefully and evenly tightened, there would be danger that the inner edge of the rim would slip upon the flange of the felly band, producing a detrimental angular misplacement or "cocking" of the tire. Various other patentees had conceived means for promoting the desired close-fitting concentricity of rim and wheel by the use of raised segmental or tapered bearing surfaces on the outer edge of the rim (see, among others, patent to Lambert, No. 982,143; patent to Baker, No. 1,-095,953; patent to Baker, No. 1,123,065; patent to Harbridge, No. 1,165,096; patent to Wagenhorst, No. 1,231,314; patent to Jobski, No. 1,298,050; and patent to Manternach, No. 1,336,531); but in respect of all of these patents it is said, and we see no reason to doubt the statement, that because of the location of the raised bearing surfaces upon the rim, a certain amount of clearance between them and the felly band was necessary in order to permit the rim to be swung into place, or, at least, that such clearance was always provided in practice.

Thus one main feature of novelty in the disclosures of the Rubsam patent No. 1,395,-362, hereinafter referred to as his first patent, is said to be that the contact between raised segmental bearing members interposed between the rim and felly is a heavy binding contact in order better to secure concentricity of the rim and wheel and prevent cocking during the tightening of the clamps. Rubsam was obviously not entitled to, and did not attempt to secure, a patent for this result, which at best differed from former patented structures only in degree; but to a patent, if at all, for the means by which this "true concentricity" was obtained. To produce this result Rubsam utilized the upper bearing member, adjacent both sides of the valve stem, suggested by Manternach. This extended around approximately the upper 180° of the wheel. He also provided a raised segmental bearing member approximately 60° in length on the outer, lower edge of the rim, diametrically opposite the valve stem opening. Adjacent this lower bearing member, on either side, substantial clearance spaces were provided to complete the circle, that is, each of these clearance spaces was approximately 60° in length. In respect of the upper bearing surface he says: " * * * The same may, if desired, be in sections, that is, divided into a plurality of arcs preferably not extending through substantially more than 180° of the external circumference of the wheel body." Of the lower bearing surface he says that it "is sufficiently less than 180° in extent [but how much less does not appear] to provide one or more bridges or gaps 21, 21, where flexing of the rim when in position on the wheel body may take place."

The drawings disclose a structure in which there is apparently no flexing or flattening of the rim at the clearance spaces, and while the specification provides that "the external diameter of the wheel body to a point thereof corresponding to a raised cylindrical bearing surface, such as 19, is substantially greater than the corresponding internal diameter of said rim * * *," it must be apparent to any one familiar with mechanics that if the exterior diameter of the wheel body just equals the internal diameter of the rim at the bearing surface points, the desired binding effect will exist, although in lesser degree, until the rim reaches its final vertical position, causing the rim to "snap" into place, and offering resistance to any lateral displacement. In our opinion, therefore, the first patent disclosed, although it did not claim, the subject-matter of the inventions of patents Nos. 1,576,225 and 1,576,226, hereinafter referred to as the second and third patents, in so far as this subject-matter of the later inventions consisted of either the positioning of the bearing surfaces, or the equality of length of the diameters of the rim and wheel body, or the combination of both of these structural elements, and we see nothing more than mechanical ability in the introduction of the other elements of construction in the later patents.

### III.

The first patent was issued November 1, 1921. Application for the second patent was filed March 26, 1924, and application for the third patent was filed February 18, 1925. The structures of the last two mentioned patents are designed with reference to felly bands of the metal channel type. In the second patent segments of the outer flange of the channel felly band are cut away so as to provide clearances, the raised segmental

bearing surfaces are thus upon the outer flange of the felly, and the diameter of the inner periphery of the demountable rim is specified as "substantially the same" as the diameter of the wheel body at the raised portions of the flange. The only other difference in the structure is that the single upper bearing surface, extending through substantially 180° of the wheel circumference in the first patent, is replaced by two much shorter bearing surfaces separated by approximately 120°, on centers, and the lower bearing surface is likewise replaced by a bearing surface of much smaller extent. These changes were stated to be optional in the first patent. In the third patent the same three bearing surfaces are retained, but they, and the clearances between them, are produced by circumferential depressions stamped in the rim, the outer flange of the channel felly band being radially shorter at all points than the inner flange.

The fundamental theory of all three patents is the same, and is admitted so to be by plaintiffs' expert. The specification of the first patent expressly provided that the upper bearing surface might be divided into the two upper, widely separated bearing surfaces of the later patents, and in all of them a more or less heavily binding contact was substituted at points where before, it is said, there had been radial clearance. In so far, therefore, as these features comprised the invention of the later patents, the subject-matter was disclosed in the publication of the first patent. This publication would effectively preclude the patentee from securing a valid patent for the invention so disclosed, or from procuring a reissue, except upon an application filed within two years of the date upon which the first patent issued, or upon the continuation of an application pending within such period. Directoplate Corp. v. Donaldson Lithographing Co., 51 F.(2d) 199, 203 (C. C. A. 6).

■ To meet this objection it is urged that the second patent contains the statement: "The present application is, in part, a continuation of an application filed by me October 9, 1919, Serial No. 329,500," and that the second and third patent applications were obviously copending. In support of the quoted statement plaintiffs introduced into evidence a copy of the "Forfeited and Abandoned Application of Charles F. Rubsam, filed October 9, 1919, Serial No. 329,500," but there is no evidence of when or for what reason this application was forfeited and abandoned. Since it was filed prior to the renewal of the application upon which the first patent issued, and more than two years prior to the date of such issue, the natural assumption is that it was abandoned upon the allowance of the claims of the first patent. We do not think that a presumption that the abandoned application was pending and unabandoned when the applications for the last two patents were filed can be said to arise merely from the statement in the application of the later patent. The entire file wrapper of the abandoned application was available and the fact might thus have been conclusively shown, but was not. In the absence of such proofs we are of the opinion that plaintiffs have not established the fact that the later application was, even in part, a valid continuation of the abandoned application. To have it so operate the second application must have been filed before the abandonment and forfeiture of the first, and it is this which has not been shown.

■ In Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 137 F. 80, 82 (C. C. A. 8) the court says: "But the abandonment of an application destroys the continuity of the solicitation of the patent. After abandonment a subsequent application institutes a new and independent proceeding, and the two years' public use or sale [here publication] which may invalidate the patent issued upon it must be counted from the filing of the later application." This same principle is announced in Rosenberg v. Carr Fastener Co., 51 F.(2d) 1014, 1016 (C. C. A. 2). Numerous cases are cited by both courts to support the text. Since, therefore, the subject-matter of the second and third patents was published in the first, with only such changes in form or design as were well within the realm of mechanical selection [Cf. Beck-Frost Corp. v. Ford Motor Co., 44 F.(2d) 519 (C. C. A. 6)], the plaintiffs' case must stand or fall on the first patent in suit. As was held in Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U. S. 704, 51 S. Ct. 232, 75 L. Ed. 634, the monopoly of an earlier patent may not be extended by subsequent patents which disclose the invention of the earlier patent and, in addition, merely mechanical improvements which do not in themselves involve invention.

### IV.

■ Claims 4, 5, and 6 of the first patent are in suit. Claim 6 may be taken as typical and is printed in the margin.[2] We pass with-

[2] "6. A vehicle wheel comprising a wheel body having a flange, a removable rim for said wheel body,

out detailed consideration the questions of anticipation, and whether Rubsam's concept involved an exercise of the inventive faculty or was merely the carrying forward of an old idea, any elements of change differing from the prior art only in degree, for we think that the validity of the claims in suit may and should be decided upon their sufficiency under the provisions of Revised Statutes, § 4888 (35 USCA § 33). Perhaps it is only necessary to remark here that the art was a crowded one; that the end to be achieved had long been recognized as desirable; that others had, in large measure at least, accomplished the same purpose as Rubsam and by much the same means; and that the patentee in this action is therefore not entitled to that liberality in the construction or interpretation of his claims, if that question be involved, which would be accorded to him in the case of a more generic patent.

As we have probably already indicated, we think that the only elements of real merit and of patentable novelty in Rubsam's concept lay in the location given the single raised bearing surface in the lower arc of the rim and in its very limited circumferential length, with extensive clearance spaces on both sides; and did not consist at all in placing the bearing surfaces on the outer edge of the rim, or in making them segmental or arcuate in shape. These latter features were already old in the art, and practically all the prior inventors had sought to attain a "close fit" or "true concentricity" by making the length of the diameters of the rim and wheel body, at such bearing surface points, substantially equal. But it is argued that it was impossible to do this in the prior art structures, as, for example, in the structure of the patent to Baker, No. 1,095,953, because of the location of bearing surfaces at points approximately 135°, 180°, and 225° from the pivot or valve stem opening. These, it is said, would block the mounting of the rim. In other words, it is now urged that the very essence

of the invention lies in the location and limited circumferential extent of the bearing surfaces in the lower arc, and that it is due to these structural features, and these alone, that the device is operative and that the close fit or true concentricity is obtainable without provision for additional radial clearance at the bearing points. Evidence was offered tending to support this contention, but whether due to a misconception by the patentee of the nature of his invention, or to inadvertence or mistake, the invention is neither so described in the specification nor so claimed.

Under the provisions of Revised Statutes, § 4888, a patentee's right to a monopoly is limited to that which is described and claimed. We have frequently held that, in the language of the section, the patentee must "particularly point out and distinctly claim" that which he considers his invention or discovery. That which is not so claimed, in the original patent or by reissue, is irrevocably abandoned to the public. Directoplate Corp. v. Donaldson Lithographing Co., supra. To this extent, at least, the claims measure the invention. Cf. Steel Wheel Corp. v. B. F. Goodrich Rubber Co., 42 F.(2d) 406 (C. C. A. 6); Sun Ray Gas Corp. v. Bellows-Claude Neon Co., 49 F.(2d) 886 (C. C. A. 6); Bettendorf Co. v. Ohio Steel Foundry Co., 56 F.(2d) 777, 779 (C. C. A. 6). Doubtless, as we have stated in these decisions and in many others, the court will liberally construe the claims of a patent for a meritorious invention, so as to protect the patentee in its enjoyment in proportion to his contribution to the art, but there must at least be some attempt to claim the combination of elements or structural features later relied upon as constituting such invention, and some teaching in the specification that in their size, shape, location, combination, arrangement, or co-operating functions is to be found the forward step in the art, the departure from that which is old, the novelty and utility which merit the grant of a patent. Otherwise the mandate of section 4888 would be a mere nullity. Just as there is no room for construction if the claims are unambiguous, so also, even though some ambiguity may exist as to the precise meaning of the claims, the court may go no further in removing that ambiguity than is permitted by an application of the teachings of the patent to the language used in the claims. Compare Rhamstine v. Sparks-Withington Co., 58 F.(2d) 583 (C. C. A. 6). Construction may not serve the function of reissue. The claims may not thus be redrafted to cover a different combination of ele-

---

means associated with the said rim and said wheel body for permitting the former to be swung into position on the latter about a portion of the wheel body as a pivot, said means comprising a plurality of raised substantially cylindrical segmental bearing members interposed between said rim and said wheel body, said bearing members being spaced from each other, certain of said bearing members being included entirely within one and the remainder of said bearing members being included entirely within the other of two complementary arcs of about 180° each, one of said arcs including that portion of the wheel body about which the rim is swung as a pivot, the bearing members on both of said arcs being on that side of the wheel which is remote from the vehicle, and clamping means intermediate certain of said spaced bearing members for clamping the rim against the flange on the wheel body."

ments; but the specification may be used only as the lexicon by which the true definition of the words used in the claims is to be ascertained.

In the instant case a limitation in the size and location of the bearing surfaces was of controlling importance to a definition of the invention, as that matter is now presented to us, but even under the most liberal construction we are unable to discern an intent to so claim it. The obvious teaching of the patent is that by making the diameter of the wheel, at the bearing surface points, "substantially greater than the diameter of the rim," and by providing adjacent clearance spaces for the physical distortion of the rim during mounting, the rim *might be forced into position* and the use of clamps to hold it there might be eliminated or their number greatly reduced. The defendants do not follow these practices, and the claims do not cover them. It is true that there is a call for means "for permitting" the rim to be swung "into position" upon the wheel body, but in view of the teachings of the patent and the remainder of the claim we are constrained to regard this as merely a call for raised bearing surfaces interposed between the rim and wheel body, without regard to number or precise location, thus holding the rim "in the position" of concentricity after it had been mounted. We recognize in it no intent to specify the number, location or circumferential extent of the bearing surfaces in the lower arc.

It is also true that the drawings may be said to disclose a structure having a single bearing surface of limited circumferential extent which we have said was of the essence of the inventive step. This, however, is not enough to bring the patent within the provisions of Revised Statutes, § 4888, in respect of this structural feature. In Permutit Co. v. Graver Corp., 284 U. S. 52, 52 S. Ct. 53, 55, 76 L. Ed. 163, the court held that "while drawings may be referred to for illustration and may be used as an aid in interpreting the specification or claim, they are of no avail where there is an entire absence of description of the alleged invention or a failure to claim it." In this case it is also said that the statute requires precision, not only to insure enjoyment of the invention after expiration of the patent, "but also to inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not." In Bettendorf Co. v. Ohio Steel

Foundry Co., supra, we said: "Clearly, if the claims as stated fail to disclose a patentable invention, no license is required, the device may be made and used by any one." By the claims in suit the patentee has sought to cover any and all locations of bearing surfaces in the lower arc, without regard to number or circumferential extent, provided only that such bearing surfaces were "spaced from each other" and were located on the outer edge of the rim. By attempting to include too much, instead of restricting it to the narrow limits of his true inventive concept, the patentee has made the claim read upon the prior art. In thus claiming only that which was old he has lost all.

Perhaps realizing this difficulty, and in preparation for the present action, the patentee filed a disclaimer on August 28, 1928, in the terms printed below.[3] This disclaimer we think is to be regarded as an invalid attempt to specifically introduce into the patent, although still clouded in terms of function, a fundamental element of structure and operation not theretofore described in the specification or claimed—to now claim that which the patentee had omitted to claim and which, because of the lapse of time, could no longer be secured by reissue. That which serves in essence to introduce new elements into a combination, and thus may be proper subject-matter for reissue, is not, we think, subject-matter for disclaimer, especially when supported by no more foundation than the drawing. Hailes v. Albany Stove Co., 123 U. S. 582, 8 S. Ct. 262, 31 L. Ed. 284; Hudson Motor Car Co. v. American Plug Co., 41 F.(2d) 672 (C. C. A. 6).

Lastly, it is contended that because of the license agreement the defendant is estopped to claim invalidity. While this might be so in an action for royalties upon wheels manufactured and sold prior to the termination of the license, of which cause of action we have held the District Court did not have jurisdiction, it is not so as to a claim for infringement after the license had been cancelled. Cf. Drackett Chemical Co. v. Chamberlain Co. (C. C. A. 6) 63 F.(2d) 853, decided March 13, 1933. The court might well view the contentions of the defendant with some suspicion, but in the last analysis the question

---

[3] "6. To the combination of claim 6, except where in such combination, there are circumferentially-extending clearances or spaces between the rim and the wheel body *at the points necessary to permit the inner side of the rim to clear the outer side of the wheel body* and to permit the rim, when it has been placed on the body, to be concentrically spaced around the body, by the bearing members." [The italics are ours.]

of the validity of the patent must be decided without regard to the pre-existing relationship of the parties.

For the reasons above stated the claims of the first patent in suit must be held invalid for insufficiency of disclosure and claim description; and those of the second and third patents are likewise invalid. It is therefore unnecessary to pass upon the question of infringement. The decree of the District Court is reversed and the cause is remanded with instructions to dismiss the bill of complaint, but without prejudice to the maintenance of an action in the state courts for the recovery of royalties for the period ending April 21, 1928.