### FITZHENRY et al. v. ERIE R. CO.

District Court, S. D. New York.

Aug. 10, 1934.

David Ross, of New York City (Charles E. Cotterill, of New York City, of counsel), for plaintiffs.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Theodore Kiendl, Marion B. Pierce, and A. S. Edmonds, all of New York City, of counsel), for defendant.

CAFFEY, District Judge.

I regret the delay in disposing of this matter; but it has been unavoidable. The oral argument was on April 24. The principal briefs were furnished in about three weeks thereafter. In the meanwhile I had become absorbed in other court work having preference right to my time. Save for a short vacation, I have been continuously engaged ever since on that work. In consequence, there has not been earlier opportunity even physically to go over the papers.

Jurisdiction is invoked exclusively under subdivision 8 of section 24 of the Judicial Code (28 USCA § 41 (8). It is predicated wholly upon the claim that the defendant has violated the Interstate Commerce Act (49 USCA § 1 et seq.). An essential initial inquiry, therefore, is whether the bill shows a violation.

The tariff schedule (Exhibit A to the bill) is a part of the pleading, unaffected by any allegations therein as to its meaning. Interstate Land Co. v. Maxwell Land Grant Co., 139 U. S. 569, 577, 578, 11 S. Ct. 656, 35 L. Ed. 278. See, also, Romaniuk v. Locke (D. C.) 3 F. Supp. 529. It provides for truckage to be furnished by the defendant, when requested, to consignors before rail line haulage commences or to consignees after it ends. The contemplated carriage of freight by truck is either from the places of consignors to the stations of the defendant for rail line haulage, beginning at the stations, or from the stations of the defendant to the places of consignees after rail line haulage has terminated. It is, therefore, an accessorial service, additional and supplemental to actual haulage by the defendant on its own line from one of its stations to another.

For some truckage the charges can be precisely ascertained from the schedule. This is done by computation. On some traffic the charges for rail line haulage alone are identical with the charges for both rail line haulage and trucking. One illustration will suffice to bring out the entire scheme of the schedule.

On page 7 in column 1 are rates from 29 to 35 cents per 100 pounds for all rail haulage from station to station. Immediately adjacent and opposite to those rates are set out, under column 2, the charges for such rail haulage plus trucking of each item for which the all rail haulage rate alone is shown in column 1. For the freight for which the all rail haulage rate is from 29 cents to 34½ cents, by subtraction it appears that the addition for truckage is, in a falling scale, from 6 cents to 1/2 a cent per 100 pounds. The difference between the figures in the two columns indicated then disappears. For the freight on which the all rail rate is 35 cents, the charge for both the rail haulage and trucking is exactly 35 cents. In other words, for the handling by defendant of that particular freight the charge is the same, irrespective of whether trucking be performed by it or not.

With immaterial variances, in so far as has been called to my attention by counsel or as I have myself observed, the plan of the illustration is maintained throughout the schedule.

The bill does not assert that the practice described is unreasonable or discriminatory. The complainants concede, as is incontrovertibly true, that if unreasonableness or dis-

crimination were the basis of criticism, preliminary proceedings before and action thereon by the Interstate Commerce Commission prior to bringing the matter into court would be necessary. What they say is that the schedule, without dispute or room for dispute as to the facts, infringes the statute itself, and that, accordingly, they are entitled to an injunction without ever having applied to the commission.

In extended oral argument and in elaborate briefs the complainants have pointed to but a single respect in which they urge that there has been a breach of the Interstate Commerce Act. Not only the gravamen of the bill but the sole offense, according to the allegations, is that, within the requirement of paragraph 7 of section 6 of the act (49 USCA § 6 (7) that the tariff schedule comply with the act, in some instances the defendant does not, in conformity with paragraph 1 of the section (49 USCA § 6 (1), "state separately" the charges it makes for truckage. Is that true? What is the proper answer to that question is the nub of the controversy.

For convenience of reference hereinafter, the cases embraced in the illustration above will be divided into two groups, designated by letters. Where the figures in column 2 (the charges for combined all rail haulage and trucking) are higher than the immediately adjacent corresponding figures in column 1 (the rates for all rail haulage alone), the cases will be called group A. Where the figures in both columns at the points mentioned are the same, the cases will be called group B.

As heretofore seen, in group A the addition for trucking is plainly revealed in every instance. By the simple process of subtraction, at a glance when reading the schedule, the patron knows instantly what is the cost of trucking each item. He knows also that in this group his expense for trucking by the defendant runs from 1/2 cent to 6 cents per 100 pounds in the several classifications of freight involved. In the same way as to group B, the patron, upon mere inspection, finds that if he avails of trucking, there will be no addition whatever to his expense.

To state is to express, to set forth, to narrate, to recite or to report. To constitute a statement it is not necessary to indulge in labeling; nor is labeling the sole means by which the purpose of the statutory provision may be accomplished. It would be an unwarrantably narrow interpretation of the provision to hold that a freight schedule failed to conform to it if the labeling were omitted. Indeed, as I understand the complainants, they do not contend that in the group A cases the statutory demand of separate statement has not been fully met. Their objection is confined to group B cases. Has paragraph 1 of section 6 been contravened in those cases?

On the one hand, it is insisted that in group B cases no additional charge whatever is made for trucking; that the trucking is free; that this is shown on the face of the schedule; that, hence, the demand for separate statement is perfectly met. On the other hand, it is asserted that the trucking service is not gratuitous; that inevitably there was some charge for it; that, hence, there was failure to set it out separately.

There are several circumstances which persuade me that the former interpretation is right. Two are particularly significant: (1) There is a graduated reduction in the scale of charges for the combination of rail haulage and trucking (group A cases) towards nothing above the rate for rail haulage alone. It was but a slight step, and not an unnatural step, from 1/2 a cent to nothing; altogether to eliminate any charge whatever for trucking. (2) Because it is optional with the patron whether he will avail of trucking and other provisions of the law forbid departure from the regularly published and filed tariff rates for rail haulage of which the first column is composed, save by the device the defendant employs it would not be within its power to maintain the rates established for all rail hauls and yet at the same time permit the election as to trucking; otherwise phrased, adoption of the view of the complainants would force the defendant to abandon equalizing of the charges for rail haulage and trucking, combined, with the rates for rail haulage alone.

It is to be borne in mind that for the moment we are inquiring only whether there has been separate statement. At this stage of our consideration, and in order adequately to determine whether there has been separate statement, we are not concerned with whether in some other respect the schedule is unlawful.

█ It seems to me that, by its very terms, the schedule makes unambiguously clear that in some cases (group B) trucking is offered for which there is no obligation to pay a cent. The service is free in those cases if the patrons want it. This is as plain as it could be made by insertion of a clause to the effect that in group B cases no charge will

be made for trucking. In all other cases (group A) trucking costs the patron something. Inasmuch as every item of trucking which must be paid for, confessedly, is separately stated, I cannot escape feeling that the statutory requirement of separate statement of charges is complied with. For no service outside of group A cases is there a charge. It follows that "all" the charges which, under any circumstances, are collectible are set out. There are no other charges. How conceivably can a charge be "separately" stated when none exists The only possible truthful statement on that subject, whether the statement in form be separate or in form be carried along with other information, which could be incorporated in the schedule or which by any possibility would enlighten the shipping public, is that the service is free. A statement to that effect is made. When made, it is plenary. The statement that a charge is made for the service would be contradictory and would negative the other statement that there is no charge for it.

From the standpoint of revenue, it is true, of course, that for the entire handling, on the rails and by truck, of a particular item of merchandise in group B cases there is no remuneration for trucking. But what of it? It may be that a practice which so results is improper. If so, however, it is not improper because of omission to meet the requirement of separate statement of charges, the only vice alleged by the complainants. Some other identified fault must be revealed. The practice may be unreasonable. It may be discriminatory. If an allegation of either were the basis of assault here, however, it is obvious, and as I understand is admitted by the complainants, that no judicial remedy on that account would be open to them until after they shall have procured action about it by the commission.

In no sense, as I see it, can it be rightly said that rendition by a carrier of free trucking service includes that service in the charge for rail line haulage. If it were otherwise, then the truckage would not be without expense to the patron. If there be no charge for trucking and that fact be made plain in the tariff schedule, manifestly there is nothing further concerning trucking which, by separate statement or by any means whatever, could be embodied in the schedule.

■ It may well be that the line drawn by the defendant between the service for which it does and the service for which it does not make a charge is erroneous. It may even be that it can be established that it is arbitrary. The defendant may be unable to sustain the reasonableness or justice of the practice. Whether this be so presents a problem of vast complications. Its solution would involve assembly and consideration of a great mass of facts having an economic bearing and having to do with the way railroad transportation is carried on. A court, however, is not equipped initially to pass on it. Congress has erected and maintains the commission for the very purpose of conducting the investigations and making the findings needed for reaching intelligent conclusions about such matters. Until those investigations have occurred and those findings are before the court, it is not within its province to entertain lawsuits in which such extraneous factors are determinative or even play a part. The philosophy of the foundation on which this proposition rests seems to me never to have been better elucidated than in Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, when it was originally announced. See, also, United States Nav. Co. v. Cunard S. S. Co., 284 U. S. 474, 52 S. Ct. 247, 76 L. Ed. 408.

With respect to the claim that the Interstate Commerce Act was violated, for the reasons given I am of opinion that the bill does not state a cause of action within the present jurisdiction of the court.

The complainants take the further position, however, that, notwithstanding the determination adversely to them of the only federal question presented, this court has jurisdiction and is obligated to pass on the question under the state law which is advanced by the bill.

■ Let it be assumed that, the federal question not being colorable merely, this court is authorized to decide the state question. If this be so, nevertheless, as I read the authorities, in no case binding on this court is the power characterized as more than a right on the part of the court. It is not declared that the court has a duty to go on with the state question. Neither in Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175, 29 S. Ct. 451, 53 L. Ed. 753, and Cuyahoga Power Co. v. Akron, 240 U. S. 462, 36 S. Ct. 402, 60 L. Ed. 743, cited by the complainants, nor in Chicago G. W. Ry. v. Kendall, 266 U. S. 94, 45 S. Ct. 55, 69 L. Ed. 183, or Risty v. Chicago, R. I. & Pac. Ry. Co., 270 U. S. 378, 46 S. Ct. 236, 70 L.

Ed. 641, or any other of the numerous Supreme Court decisions I have examined do I find the contrary established. Cf. United Fuel Gas Co. v. Railroad Commission, 278 U. S. 300, 307, 49 S. Ct. 150, 73 L. Ed. 390.

The extreme to which the court goes in the Siler Case, which is most relied on by the complainants, is to say, at page 191 of 213 U. S., 29 S. Ct. 451, that there is a "right" to adjudicate the state question even though the complainants shall have failed on the federal question. It is not said that the litigant has any "right" to have it adjudicated. Moreover, my impression is that assumption of jurisdiction of the state question in the instant case would be inconsistent, at least in principle, with quite definite pronouncements in Elgin Watch Co. v. Illinois Watch Co., 179 U. S. 665, 677, 21 S. Ct. 270, 45 L. Ed. 365, and A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U. S. 166, 172, 26 S. Ct. 425, 50 L. Ed. 710. Cf. Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U. S. 446, 31 S. Ct. 456, 55 L. Ed. 536.

If this court possess the jurisdiction to deal with the state question, but have discretion as to its use, then I feel strongly that it should not be exercised here.

The defendant is a New York corporation (paragraph II of the bill). The state question arises under the New York Public Service Commission Law. Because of those facts, it strikes me that it is much more appropriate that New York state instrumentalities be resorted to. Indeed, preceding any effort to get either administrative or judicial relief from the state, from the practical as well as from the legal standpoint, I regard it as inappropriate for a federal court to intervene.

The authorities on the issue have not been fully developed by counsel. Consequently, I have myself made some search of them. Unavoidably this has been hurried and lacking in thoroughness. If, after reading what I have written, either think any case not previously mentioned, which was decided by the Supreme Court or by the Circuit Court of Appeals for the Second Circuit or by this court, holds squarely that it is mandatory that the state question be ruled on, I shall be glad to consider it if drawn to my attention.

There is a wholly different aspect which remains to be treated.

The implication of the bill is that the defendant has no tracks in the state of New York. It merely has stations in New York.

In paragraph XII of the bill it is alleged that these, for receiving as well as for the delivery of freight, are in the city of New York. One is in the borough of Manhattan; another (the Harlem station, at 149th and Exterior streets) is in Manhattan or the Bronx, though in which is not affirmatively shown and I have not deemed it worth while to learn definitely, if the location be matter of which the court can take judicial notice. Hence, two stations are within the territorial jurisdiction of this court. Apparently the balance of the stations are in the Eastern district.

I construe the general phraseology employed in the bill to mean that trucks of the defendant are operated from each station. If that be correct, then paragraph XX alleges that there is trucking over municipal highways from two stations within the Southern district of New York, without consent of the New York Public Service Commission having been applied for or obtained by the defendant. The contention of the complainants is that lack of such consent renders defendant's trucking unlawful under the state statute (section 50-a of the Public Service Commission Law (Consol. Laws, c. 48, Laws of 1926, c. 840, as amended by Laws of 1929, c. 686). On this claim alone turns the state question.

I believe it manifest that the violation of state law, if any, is a wholly separate cause of action from the cause of action, if sustained, of violation of the Interstate Commerce Act counted on; that the two avowed legal wrongs are wholly distinct and even unrelated. If I be right as to that, then there is no jurisdiction of the state question; the bill cannot be retained because of the presence in it of a substantial question under federal law. Geneva Furniture Mfg. Co. v. S. Karpen & Bros., 238 U. S. 254, 35 S. Ct. 788, 59 L. Ed. 1295; Hurn v. Oursler, 289 U. S. 238, 53 S. Ct. 586, 77 L. Ed. 1148; Levering & Garrigues Co. v. Morrin (C. C. A.) 61 F.(2d) 115, affirmed on another ground in 289 U. S. 103, 53 S. Ct. 549, 77 L. Ed. 1062. See, also, Recamier Mfg. Co. v. Harriet Hubbard Ayer, Inc. (D. C.) 59 F.(2d) 802; General Motors Corporation v. Rubsam Corporation (C. C. A.) 65 F.(2d) 217.

If no controlling decision be produced (say within ten days) pursuant to which I am convinced that this court has jurisdiction of and is bound to pass on the state question, the motion to dismiss the bill will be granted, but with leave to amend it (say,

within twenty days, or within whatever period counsel may agree on, or, if they cannot agree, the court will fix). If counsel for the complainants do not wish to be heard further, an order dismissing the bill, in accord with the foregoing, may be settled immediately on two days' notice.