## MERCHANT TRUCKMEN'S BUREAU OF NEW YORK v. REARDON et al.

District Court, S. D. New York.
Feb. 14, 1935.

On Rehearing April 3, 1935.

Charles E. Cotterill, of New York City, for petitioner.

Burlingham, Veeder, Clark & Hupper, of New York City (Windsor F. Cousins and H. Z. Maxwell, both of Philadelphia, Pa., and Ray Rood Allen, of New York City, of counsel), for respondents.

CAFFEY, District Judge.

With respect to several matters discussed in the argument, I think these things are clear and need not be further considered: (1) The petitioner is a competent complainant to the Commission; (2) what is presented to this court is not moot, the right to present it having been explicitly reserved at the hearing before the Examiner and the closing having been upon that condition (Minutes, pp. 44, 46, 88–95); (3) paragraph (3) of section 12 of the Interstate Commerce Act (49 USCA § 12 (3) empowers the court, on application of the petitioner, to make an order requiring witnesses to answer pertinent questions which they have previously refused to answer, without claim of constitutional immunity on their part; and (4) inasmuch as the Commission has said it will hear them, in event they are directed to appear further, there is no danger of the witnesses being punished for contempt without opportunity to purge themselves.

If what has been recited above be accepted, then, as I see it, the entire controversy is reduced to a single inquiry, viz.: Did the interrogatories addressed to the witnesses call for what is immaterial?

While I should have preferred that the matter go to the Commission in the first instance, I think the petitioner is entitled to have it dealt with by the court.

It is manifest from the record as a whole, and indeed the parties concede (Minutes, pp. 6, 7, 9), that what is involved in the proceedings before the Commission is whether the charges made by the defendant carriers to their patrons for collection and delivery service, as set out in their published tariffs, are too low. It is only in this sense that the charges are assailed as unjust or unreasonable, within the prohibition of paragraph (5) of section 1 of the statute (49 USCA § 1 (5).

The respondents before this court are disassociated truckmen, who have per-

formed collection and delivery service for one of the carriers. When on the witness stand these truckmen declined to state what compensation the carrier paid them. The only reason assigned for their refusals was that the information sought was irrelevant (Minutes, pp. 30–34, 40–42).

Was the information asked for irrelevant?

■ It is too plain for argument that, under section 12, no court should compel a witness to give an answer which has no bearing on what is under investigation. Nevertheless, if the Commission were invoking the aid of the court, there would be a plain duty to go as far as possible to extract whatever any witness knows—short of invading his constitutional rights—without at the moment delving much into its purposes. This is so because the Commission is an expert government agency charged with grave and onerous responsibilities in regulating conduct in the highly complicated field of transportation. Where, as here, however, a rival only of the witnesses seeks the court's aid, the situation is different. So also common sense, as well as sound principle, suggests that it be handled differently. In such circumstances there is no warrant whatever, for invading the privacy of witnesses, unless the answers are needed to enable the litigant before the Commission fully and fairly to support, or to bring out facts which may have a tendency to support, his own case there. The burden is on that litigant to show that what he wants the witnesses forced to answer will shed light on the controversy. There would be no justification for assisting a rival merely to gratify his curiosity.

■ In the absence of a complaint by shipper or consignee that he is being charged too much or by another carrier of unfair competition or by any one of discrimination, or of an inquiry by the Commission itself to see if waste is occurring or the statute is being violated in some way, it does not seem to me that whether the rates exacted from its patrons are unjust or unreasonable depends in any degree on whether the service cost a particular carrier more than is charged for it by that carrier.

Here no patron objects; no other carrier objects; nobody alleges discrimination; the Commission has given no sign that it wishes to know whether there is dissipation of revenue on the part of any carrier or to know anything else. Whether, therefore, the witnesses should be compelled to answer turns on whether the amounts of their own compensation for trucking is a factor in ascertaining the justness or reasonableness of what shippers or consignees pay directly to the carriers for this service.

The justness or reasonableness of rates which carriers charge for trucking is, in so far as I can see, wholly unaffected by their expense for performing the service being greater than what they collect for it. It impresses me as so clear that what a carrier pays an employee or a contractor to do the work cannot influence the determination that an effort to sustain the proposition, beyond its mere statement, is like attempting to demonstrate the obvious.

My attention has not been called to, and I have not discovered, any provision of the statute which renders it unlawful for a carrier to charge a customer less than cost for service it renders him. Unless such conduct by a carrier be illegal, it would be useless to take proof of it. Indeed, as I conceive, it would be abuse, at the instance of a rival, to force witnesses to testify concerning it.

In consequence, I conclude that it has not been established that what was sought from the witnesses would contribute to the solution of the problem addressed to the Commission.

The petition is, therefore, denied. Let it be understood, however, that this denial is without prejudice to any application by the Commission if it should hereafter wish to present the same matter to the court. Settle order on two days' notice.

## On Rehearing

Though I am not now certain in my recollection on the subject, I think that when I heard the case at the motion part on January 25, 1935, my impression, on the oral statements of counsel, was, and that I then stated the impression, that the interrogatories which the respondents declined to answer were pertinent to the issue involved. However, after I had examined the briefs and the papers, including the stenographic minutes of the proceedings before the Examiner, my view (as set out in my memorandum of February 14, 1935) as to this phase of the matter was different. Of course, what I said during colloquy at the motion part was tentative only and I was free to change my opinion. Yet, inasmuch as my remarks from the bench may have

influenced respondents to curtail treatment in their briefs of the question of relevancy, I have been very glad to have, and it has assisted toward clarification of my own ideas to have, a reargument.

Two points only were discussed at the reargument. These are (1) whether the issue presented by the petition is moot and (2) whether the testimony sought to be elicited is relevant.

■ Upon examination of the portion of the minutes before the Examiner (pages 44–46, 88–95), referred to in my memorandum, with respect to the case being closed, I adhere to the position heretofore taken that the petitioner reserved the right to a court review of what is raised in the petition. Certainly review would not be foreclosed if what transpired at the Examiner's hearing had occurred in a court. My attention has not been called to any statute or rule which alters the situation merely because the proceedings were before the Commission and a reopening by the Commission of those proceedings has not been obtained.

So also I adhere to my former position that the testimony sought is immaterial.

In the first place, I desire to emphasize that what was said in the memorandum should be understood as related solely to the precise facts before the court and not designed to lay down any general principle. To the extent, and only to the extent, that I deem it essential, in order to dispose of the controversy before me, have I considered what is the meaning of, or have I dealt with, any provision of the Interstate Commerce Act (49 USCA § 1 et seq.).

In the second place, I disclaim a purpose to depart from what was held in New York Dock Ry. v. Pennsylvania R. Co. (C. C. A.) 62 F.(2d) 1010, or in Fitzhenry v. Erie R. Co. (D. C.) 7 F. Supp. 880. On the other hand, I particularly reiterate the reluctance expressed at page 883 of the latter case to trespass into the domain of the Commission.

While the lines of demarcation to be drawn in the interpretation of so elaborate a statute as the Interstate Commerce Act are difficult to state with accuracy, and I frankly confess that the field of law is one with which I have little familiarity, yet I feel that, in the light of what the courts and the Commission have said, the paragraphs of the sections here involved are fairly plain.

■ I take it that there is no doubt of the power of the Commission, when properly invoked, to pass on charges for "store door delivery" (a term used, for convenience, as the equivalent of "Collection and delivery service" described in the complaint before the Commission, Exhibit A to the petition); nor is there dispute that, under paragraph (1) of section 15 (49 USCA § 15 (1), the Commission may fix minimum rates. On the other hand, as it seems to me, we must go into further detail before there can be determination of whether the testimony sought is germane to, or has a bearing on, what is complained of by the petitioner.

Paragraph (3) of section 1, 49 USCA § 1 (3), expressly says that transportation includes "all services in connection with the receipt, delivery, * * * and handling of property transported"; paragraph (5) of section 1, 49 USCA § 1 (5), that "all charges made for any service rendered * * * in the transportation of * * * property, * * * or in connection therewith, shall be just and reasonable." On the face of these words I think it is clear that, in the sense of paragraph (5), store door delivery is included in transportation.

What section 1 of the statute provides as to charges for transportation is that they shall be "just and reasonable." On the other hand, it does not follow from this requirement standing alone, or from this requirement when coupled with the requirement in paragraph (1) of section 6, 49 USCA § 6 (1), as to the form of tariff statement of the charges discussed in the Fitzhenry Case, supra, that the cost to the carrier of the performance of store door delivery service cuts any figure in determining whether or not the charges for the "transportation" are just or reasonable. As I understand Anchor Coal Co. v. United States (D. C.) 25 F.(2d) 462, pp. 471, 472, 476, this conclusion is the only one consistent with what was there held. As I read them, there is nothing even looking the other way in the opinion of Mr. Justice Cardozo in United States v. Chicago, M., St. P. & P. R. Co., 55 S. Ct. 462, 79 L. Ed. ——, or in any of the other decisions cited by counsel.

■ Where there is a competent and interested complainant, unless it be established that an existing rate is not compensatory and has some harmful or unfair consequence—for example, would cast a burden on other traffic—the Commission would not

be warranted in directing a higher minimum rate put into effect. Texas & P. R. Co. v. United States, 289 U. S. 627, 633, 53 S. Ct. 768, 77 L. Ed. 1410. See, also, United States v. Chicago, M., St. P. & P. R. Co., supra, 55 S. Ct. 465, 466, 79 L. Ed. ——. But the single showing that an existing rate is less than compensatory, standing alone, does not authorize the Commission to prescribe an increased rate.

In the first place, I think it is not to be gainsaid that, in the absence of the minimum rate fixing power conferred by the 1920 amendment (41 Stat. 484, § 418) to paragraph (1) of section 15 (49 USCA § 15 (1), there would be no basis whatever for or even plausibility in the petitioner's contention that the Commission is called on by the pending petition to fix a minimum separate charge for store door delivery. Under the statute as it stood prior to 1920, it seems to me that the contrary was sustained by the Commission itself in Perishable Freight Investigatión, 56 I. C. C. 449, 463–465. On the other hand, the Anchor Coal Co. Case arose subsequent to 1920 and, as previously pointed out, I construe that decision, in effect, to hold that the fixing of minimum rates, pursuant to the amendment, is confined to circumstances, there recited, in which store door delivery plainly is not and cannot be embraced in a case in which the complainant is not itself a carrier or the patron of a carrier or a locality but is a competitor merely in trucking. In substance, those circumstances are where the enforcement of minimum rates is essential to prevent ruinous rate wars or to yield a fair return or to guarantee reasonable earnings to carriers concerned or to their carrier competitors or to avoid burdening other traffic. Again, in Motor Truck Club of Massachusetts v. Boston & Maine Railroad, 206 I. C. C. 18, 23, when speaking of the question now being considered, Commissioner Porter specifically said that the Commission's "authority to prescribe minimum rates * * * should be exercised only when necessary to avoid substantial public injury."

There is no allegation either in the complaint to the Commission or in the petition to this court, nor, so far as I have observed, has any proof been offered, that, by reason of the carriers furnishing store door delivery service at less than cost, the interest of the public is or has been adversely affected; nor are there any allegations or even suggestions bringing the matter within the minimum rate clause as construed in the Anchor Coal Co. Case.

In consequence, as I see it, the petitioner has not brought itself, within the rule as laid down either by the courts or by the Commission, under the minimum rate fixing provision of the statute. The case before the Commission, so far as concerns averments of facts, rests exclusively on paragraph (5) of section 1, 49 USCA § 1 (5). Under that paragraph it is not enough, when relief is asked by an outside trucking concern, for it to show that the carrier's expense for store door delivery is greater than the charges exacted therefor of shippers. See Perishable Freight Investigation, supra. The testimony sought, therefore, seems to me wholly irrelevant.

■ I think that what has just been said is true, and unless the Anchor Coal Co. Case be repudiated it must be accepted as controlling on the proposition, irrespective of whether the tariffs contain separate statement of, or materials from which can be separately ascertained, the charges for store door delivery. In all instances where there are such charges, the line hauls are by the carriers making those charges. By force of paragraph (3) of section 1, 49 USCA § 1 (3), both the line haul and store door delivery are parts of the same transportation. I do not believe it was the intent of paragraph (5) of section 1, 49 USCA § 1 (5), or even of paragraph (1) of section 15, 49 US CA § 15 (1), to define a violation unless each of the several elements of such a single transportation be, in and of itself, wholly compensatory. Indeed, attributing to the language employed any such significance, as I view it, would not only merely create an impractical system, but would be destructive of, rather than beneficial to, the sane regulation of carriers. If so, then (to the extent permitted by the language) any such interpretation should be rejected.

As stressed in my February 14 memorandum, I have refrained from any statement of an opinion as to what would be the duty of the court if the Commission were now asking its aid. Where, however, as here, the applicant is a rival of respondents in trucking, it seems to me manifest that caution should be observed in the determination of whether they should be forced to disclose the compensation they receive from the carriers. Inasmuch as I am wholly unconvinced that, under the petition as framed, the cost to the carriers of store door delivery service is a legitimate subject

of inquiry at the instance of a competitor, who is neither a carrier nor the patron of a carrier nor a locality or other person interested save as a competitor, I feel that the court is not justified in compelling the revelation sought from the respondents.

Accordingly, I reaffirm the conclusion stated in my previous memorandum.