## HAILES *v.* ALBANY STOVE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

Argued November 28, 1887. — Decided December 12, 1887.

Under the patent laws a disclaimer cannot be used to materially alter the character of the patented invention, or to effect such a change in it as calls for further description or specification in order to make it intelligible : but its proper office is in the surrender either of a separate claim, or of some distinct and separable matter, which can be exscinded without mutilating or changing what is left.

The drawings cannot be used on a disclaimer to show that the patent, as changed by the disclaimer, embraces a different invention from that described in the specification.

Sections 4917 and 4922 of the Revised Statutes are parts of one law, having one general purpose, and both relate to the case in which a patentee, through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, has included in his claims and in his patent inventions to which he is not entitled, and which are clearly distinguishable from those to which he is entitled; the purpose of § 4917 being to authorize him in such case to file a disclaimer of the part to which he is not entitled, and the purpose of § 4922 being to legalize the suits on the patent mentioned in that section, and to the extent to which the patentee can rightfully claim the patented invention.

BILL IN EQUITY to restrain alleged infringement of letters-patent, and for an accounting.   The Circuit Court dismissed the bill ; from which decree the complainants took this appeal. The case is stated in the opinion of the court.

*Mr. Andrew J. Todd* for appellants.

*Mr. Esek Cowen* for appellee.

Mr. Justice Bradley delivered the opinion of the court.

This is a suit on a patent, in which the court below decided adversely to the complainants. The patent sued on was granted to Lewis Rathbone and William Hailes, November 21st, 1865. It was for an alleged improvement in coal stoves, of the class known as "cannon" or circular stoves, so called in consequence of their consisting of one cylinder or cannon, without flues or separate fire chambers. The patentees in their specification allege that such stoves have generally been constructed with a contracted outlet, and with provision for admitting air above the fire. This, they say, they desire to obviate, having found that a much more perfect combustion can be maintained by enlarging the outlet for the smoke, and admitting air through the sides of a suspended fire-pot, at all points, and thus facilitating combustion by supplying oxygen to the burning coals beneath the surface of the fire-pot. Another object, they say, is to construct an open, circular fire-pot, which can be applied to or removed from the stove at pleasure, with a grate in its bottom, said grate being so applied that it can be moved for shaking the ashes from the fire-pot when desired.

They then proceed to describe their improved fire-pot, referring to accompanying drawings. They say:

"The fire-pot is made of cast iron of a flaring form and of such diameter as to leave a free space, *d*, all around it when arranged within the stove. It extends from the enlarged fire chamber C down into the ash chamber B, and it is made with vertical openings through its sides for the admission of air into the body of coal within it.

"The bottom of this fire-pot is an open grate, G, which may be so applied that it can be moved around a central pin, *e*, or turned upon a horizontal bar, *g*; or both of these movements may be provided for.

"It will then be seen that the fire-pot and its grate are united together, so that both can be removed from the stove together.

"By thus connecting the grate and fire-pot together and arranging them within the stove, so that they are supported or suspended by means above mentioned, they can be removed very readily from the stove when it is necessary to renew them.

"At the junction of the body of the stove with the ash-pit section B is a ledge, $h$, extending entirely around the top of said section, as shown in figure 3. This ledge is perforated at regular intervals, and it is covered by means of a marble ring plate, $i$, which is also perforated in a manner corresponding to the perforations through the ledge. This ring plate, $i$, being provided with a knob or handle, it constitutes an annular register for regulating the admission of air into the section B of the stove below the point of suspension of the fire-pot, as indicated by the arrows in figure 2.

"The flanges $b$ and $c$ effectually close the upper portion of the space $d$ surrounding the fire-pot, so that no air can pass at this point; the air which enters the smoke chamber above the fire-pot must either be admitted through the register J, in the feed door, or it must pass through the fire-pot.

"Our object is to maintain such an intense heat — in the fire-pot, by the free supply of oxygen to the incandescent coal therein — all around this pot — that there will be little or no smoke formed after the fire is fully started. In this way we obtain a more perfect combustion, and are enabled to burn soft coal and obtain the greatest heating effects therefrom.

"Having thus described our invention, what we claim as new and desire to secure by letters-patent, is—

"1st. Arranging a perforated fire-pot with a grate bottom within a circular stove having provision for the admission of air below the point of suspension of said fire-pot, substantially as described.

"2d. The combination of an annular horizontal register with a suspended fire-pot which has perforated sides, substantially as described."

The drawings and model exhibited at the hearing show that

the fire-pot referred to in the patent was in the form of a basket, with grated bottom, and grated sides, for the admission of air not only through the grated bottom, but through the sides. In the drawing the grated portion of the sides extends from the bottom nearly two-thirds of the way upwards towards the top; but the specification speaks generally of vertical openings through the sides for the admission of air into the body of coal, without calling attention to, or specifying any limitation to the extent of the openings, whether all the way, or only part of the way up the side of the fire-pot; and, as seen, the principal claim is for arranging a perforated fire-pot with a grate bottom within a circular stove, having provision for the admission of air below the point of suspension of said fire-pot.

Now it turns out that, before the issue of the patent sued on, there were already in existence two patents for a fire-pot of precisely the same description; one, an English patent, granted to Robert Russell in July, 1857; and the other, an American patent, granted to Zebulon Hunt on the 14th of June, 1864. The English patent shows two separate devices, one of a tapering fire-pot or basket having grated sides, but without a grate at the bottom. "Another modification consists in constructing the fire-basket with perforated sides all around it by means of tubes." The patentee adds that "solid, bars may be used instead of tubes," and, again, "instead of making the fire dishes to turn on a pivot as previously described, I sometimes hang them by a projection or flange formed upon the upper flange of a fire-dish, which flange rests upon a corresponding projection on the inside of the casing." When the latter modification is used the inventor provides for a grated bottom to the fire-dish in the following language: "The lower ring ($f$) may be formed in one piece with the bottom of the fire-basket, and may be made solid or with apertures. . . . Apertures may be formed in the plate ($j$) to correspond to similar holes in the bottom of the fire-basket so as to regulate the admission of air to the fuel."

The Russell stove, therefore, contains all the elements of the first claim of the complainants' patent, the perforated fire-pot

with a grate bottom, suspended by a flange from the body of the stove, projecting into an ash pit or draft chamber, having provision for the admission of air below the point of suspension of the fire-pot.

It is true that the device of Russell is not placed in a circular, or "cannon" stove, consisting of a single cylinder, as defined in the patent of Rathbone & Hailes, the Russell stove being composed of two cylinders, one of which forms the coal magazine or reservoir. But we fail to see that any inventive power was required to apply the same fire-pot to a different kind of circular stove. That no invention was required seems to us too plain for argument. The patent of Zebulon Hunt shows a grated fire-pot of flaring form, suspended within the draft chamber of the stove, and provided with a grated bottom, the fire-pot suspended in precisely the same manner as in the patent in suit, and the ash pit is provided with means for the admission of air below the point of suspension of the fire-pot. Hunt's stove was also a magazine stove.

We have no hesitation in holding that the supposed invention of Rathbone & Hailes, as described and claimed in their patent, was anticipated by the prior patents referred to.

Probably in anticipation or apprehension of this result, the complainants, after the commencement of this suit, on the 30th of October, 1882, filed in the Patent Office a disclaimer, which they suppose has the effect of narrowing their patent, and of obviating the objection of prior discovery. The substantive part of the disclaimer is as follows, to wit:

"Your petitioners, William Hailes, &c., represent that in the matter of certain improvements in coal stoves, for which letters-patent of the United States, No. 51,085, were granted Lewis Rathbone and William Hailes on the 21st day of November, 1865, . . . they have reason to believe that through inadvertence, accident, or mistake, the specification and claims of said letters-patent are too broad, including that of which said patentees were not the first inventors.

"Your petitioners, therefore, hereby enter their disclaimer to so much of the first claim as covers perforations or openings in the sides of a suspended fire-pot extending throughout the

entire depth of sides, and limiting such perforations or openings to substantially the lower half of the fire-pot, the material or substantial part of the thing patented in and by said claim not hereby disclaimed being as follows:

"A fire-pot suspended from its upper edge with substantially the upper half of its sides made solid, and substantially the lower half of its sides containing perforations or openings."

Viewed as a disclaimer, this instrument naturally excites attention. A disclaimer is usually and properly employed for the surrender of a separate claim in a patent, or some other distinct and separable matter, which can be exscinded without mutilating or changing what is left standing. Perhaps it may be used to limit a claim to a particular class of objects, or even to change the form of a claim which is too broad in its terms; but certainly it cannot be used to change the character of the invention. And if it requires an amended specification or supplemental description to make an altered claim intelligible or relevant, whilst it may possibly present a case for a surrender and reissue, it is clearly not adapted to a disclaimer. A man cannot, by merely filing a paper drawn up by his solicitor, make to himself a new patent, or one for a different invention from that which he has described in his specification. That is what has been attempted in this case. There is no word, or hint, in the patent, that the invention claimed was a fire-pot with sides grated only half way, or part of the way, from the bottom towards the top, or that such partially grated sides have any advantage over those grated all the way to the top. The first claim, as modified by the disclaimer, has nothing in the specification to stand upon, nothing to explain it, nothing to furnish a reason for it.

It is contended that the drawings annexed to the patent may be referred to for the purpose of defining the invention and showing what it really was. But the drawings cannot be used, even on an application for a reissue, much less on a disclaimer, to change the patent and make it embrace a different invention from that described in the specification. This is fully and clearly shown in the recent case of *Parker & Whipple Co.* v. *Yale Clock Co., ante,* p. 87.

The counsel for the appellants suggests that there is a difference between §§ 4917 and 4922 of the Revised Statutes, (corresponding respectively to §§ 7 and 9 of the act of 1837,) and that the disclaimer filed in this case satisfies the conditions of the former of these sections. He says: "Evidently there are two sections under which a disclaimer can be made in this country: *First*, under § 4917, where the claim is too broad; that is to say, in the language of the section, where the patentee 'has claimed more than that of which he was the original and first inventor or discoverer;'— *Second*, under § 4922, where a patentee 'has in his specification claimed to be the original and first inventor or discoverer of any material or substantial part of the thing patented, of which he was not the original and first inventor or discoverer;' and it goes on to state that he 'may maintain a suit at law or in equity for the infringement of any part thereof which was *bona fide* his own, if it is a material and substantial part of the thing patented, and definitely distinguishable from the parts claimed without right.'"

We think that counsel is mistaken in supposing that these sections have reference to different sets of circumstances as grounds for a disclaimer. They both relate to the same condition of things in that regard, namely, to the case in which a patentee, through inadvertence, accident, or mistake, and without any fraudulent intent, has included and claimed more in his patent than he was entitled to, and where the part which is *bona fide* his own is clearly distinguishable from the part claimed without right. In every such case he is authorized by § 4917 to file a disclaimer of the part to which he is not entitled; and that is the only section which gives him this right. The object of the other section (4922) is to legalize and uphold suits brought on such patents as are mentioned in § 4917, to the extent that the patentees are entitled to claim the inventions therein patented; but no costs are allowed to the plaintiffs in such suits unless the proper disclaimer has been entered at the Patent Office before the commencement thereof; and no patentee is entitled to the benefits of this section if he has unreasonably neglected or delayed to enter a disclaimer.

We do not see how it is possible to misunderstand the two sections when read together, as it is necessary to read them. One section authorizes a disclaimer to be filed in certain cases; the other enables patentees to maintain suits in those cases, provided a disclaimer is filed without unreasonable delay. They are parts of one law, having one general purpose, and that purpose is to obviate the inconvenience and hardship of the common law, which made a patent wholly void if any part of the invention was wrongfully claimed by the patentee, and which made such a defect in a patent an effectual bar to a suit brought upon it.

There is no such difference in the phraseology of the two sections as to make them apply to different classes of cases. They refer to the same class, and, being read together, throw mutual light on each other. And viewed in that mutual light, we think it clear that there is no authority for amending a patent by means of a disclaimer in the manner in which the appellants have attempted to amend their patent in the present case.

*The decree of the Circuit Court is affirmed.*