## MILLER CO. v. BRIGHT LIGHT REFLECTOR CO., Inc., et al.

### No. 6378.

District Court, E. D. New York.

April 22, 1933.

John M. Cole, of New York City (George F. Scull and Joel B. Liberman, both of New York City, of counsel), for plaintiff.

Mock & Blum, of New York City (Asher Blum, of New York City, of counsel), for defendants.

CAMPBELL, District Judge.

This is an action in equity for the alleged infringement by the defendants of pat-

ent No. 1,536,844, issued to Ward Harrison and John H. Waterbury, assignors to General Electric Company, for Lighting Unit, dated May 5, 1925, on an application filed September 6, 1922.

The defendants have interposed by answer the defenses of invalidity and noninfringement.

This patent was duly assigned by General Electric Company to the plaintiff, which is the owner thereof.

The plaintiff is a Connecticut corporation, with its principal office at Meriden, Connecticut.

The defendant, Bright Light Reflector Co., Inc., is a corporation organized under the laws of New York, with its principal place of business in Brooklyn, New York.

The individual defendant, Isaac Litner, is the owner of all of the stock of the defendant corporation, and at the time of the filing of the complaint, he was the sole director of the corporation's affairs, and directed the manufacture of the device alleged to infringe the patent in suit.

After this suit was begun, a disclaimer was filed in the United States Patent Office, relating to claims 2, 3 and 4, and limiting the globe recited in such claims to a diffusing globe.

Defendants contend that the matter disclaimed was not included through inadvertence, accident or mistake, but that contention is not sustained.

There was no disclaimer as to claim 1, only as to claim 3.

■ There is some doubt in my mind whether the disclaimer was absolutely necessary, because it seems clear to me that the stated combination of claim 3 would serve no particular function unless the globe was of diffusing glass, and the plaintiff might have relied on the doctrine that claims may properly be limited if they are drawn too broadly to the disclosed invention. Smokador Mfg. Co. v. Tubular Products Co., 2 Cir., 31 F.2d 255, 257.

The disclaimer was properly made.

[2] Defendants contend that there was unreasonable delay in filing the disclaimer, and cite Hailes v. Albany Stove Co., 123 U.S. 582, 8 S.Ct. 262, 31 L.Ed. 284; Ensten v. Simon, Ascher & Co., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453.

No court had previously passed on the validity of the disclaimer, and no authority is cited which holds that there has been unreasonable delay in disclaiming, unless a court has previously passed on the validity of the disclaimed claim.

Hailes v. Albany Stove Co., supra, was decided not on the matter of delay, but on the fact that the disclaimer was used to change the invention disclosed.

Ensten v. Simon, Ascher & Co., supra, was decided on the matter of delay, which had been for a period of two years after a finding of invalidity.

■ This suit was based on claim 1 and claim 3 of the patent in suit, claim 3 being written as it reads after disclaimer, which claims read as follows:

"1. In a lighting unit, the combination of a substantially vertically disposed incandescent lamp and a support therefor, a light diffusing globe substantially inclosing said lamp and an opaque reflector positioned over and partially inclosing said globe, said reflector being recessed to allow the transmission of a substantial portion of light in substantially vertical directions through its upper portion, means for supporting said reflector and supporting means engaging said globe through said reflector."

"3. In a lighting unit, the combination of a diffusing globe and an opaque reflector of larger diameter than said globe positioned over the same and extending downwardly therearound, said reflector having passages extending there-through below the upper edge of said globe for allowing the transmission of a substantial portion of light through said reflector from said globe."

It hardly seems necessary to describe at length the defendants' infringing unit, Exhibit 5, as that is almost a Chinese copy of the plaintiff's unit, Exhibit 7, which is almost an exact reproduction of the unit of the patent in suit.

If the patent is valid, it is infringed.

What defendants think of the patent in suit is clearly shown by the fact that, in spite of the contention of the defendants that the patent is invalid, as lacking in invention, yet with all of the prior art to choose from, the defendants' alleged infringing device is almost an exact reproduction of the device of the patent in suit.

The patent in suit has had substantial commercial success.

The plaintiff having not only successfully manufactured and sold considerable quantities of the patented unit, but having

received more than $43,000 in royalties from its six licensees, all of which licenses as the evidence shows were negotiated independently in good faith and are still in force. There has been such general ac-·quiescence that this is the first suit which plaintiff has been obliged to bring to compel respect for its rights.

The claimed invention of the patent in suit is a complete lighting unit for industrial use; that is the combination of a light source, such as an incandescent lamp bulb, inside a diffusing globe which substantially encloses the bulb, and an opaque or metal reflector surrounding the globe and extending well down around the globe, with openings in this reflector located below the upper edge of the globe, so that diffused light will be transmitted from the globe through these openings to the ceiling above the reflector, and thus break up the sharp contrast between the brilliantly lighted working plane beneath the unit, and the otherwise intense darkness above the unit.

There are set forth in the patent in suit the reasons for and the advantages of the illumination of the ceiling when a metal reflector is used, as is usual in industrial lighting, but they are better expressed in the prior Minor patent, No. 1,345,796.

In that patent the patentee says: "Metal reflectors are used extensively in industrial lighting because of their unbreakableness as well as because they shield the bright concentrated light sources usually installed in manufactories and such places. Such reflectors usually direct all of the light into the lower hemisphere and leave the ceiling dark or illuminated only by light reflected back from the lower hemisphere, which is ordinarily dark colored and of a non-reflecting character. The unilluminated ceiling is in sharp contrast with the brightly lighted working plane and this contrast produces eye fatigue in those workmen who may have occasion to look up from their work. Besides the physiological effect there is an adverse psychological effect, caused by the unpleasant vault-like appearance of the shop, which is undesirable from the standpoint of the employee. Furthermore, shafting or machinery mounted upon the ceiling is hard to watch if not illuminated to some extent."

If direct light passes upward through a series of openings in the reflector body, there will be a series of separate shafts of light, each reproducing on the ceiling a bright spot which has the outline of the opening. The situation so produced resulting in concentrated bright spots on the ceiling, is as bad if not worse than no light at all.

The benefits of diffusing the light passing upward was appreciated by Minor and others.

The witness Doane states another desirable thing accomplished by the arrangement of the patent in suit, neither referred to in the Minor patent nor specifically described in the patent in suit, as follows: "If you can more closely bring the brightness of the light unit and the brightness of the background together, the eye will not have to adjust itself to these varying brightnesses, and therefore will not fatigue as rapidly. So that by decreasing the brightness of the lighting unit you can more easily match it with the brightness of the ceiling."

This is accomplished in the patent in suit by providing a large diffusing globe around the incandescent bulb, shaping this globe so as to get an extensive distribution of diffused light, both from the globe itself and from the reflector above it, on the working plane and, at the same time, providing openings in the reflector which are below the top of the globe, so that it is only diffused light which passes through the openings.

By the unit of the patent in suit the difficulties hereinbefore enumerated are overcome and about 90% of the light is thrown down on the working plane, and about 10% up on the ceiling, the light sent both up and down being diffused.

The patent in suit is for a combination which operates as a unit, and not for any of the individual elements thereof, which cooperate to give the desired effect.

Every element of the patented combination was old.

Light sources such as incandescent bulbs were well known, and it was providing these bulbs with metallic reflectors, which in some cases had been provided with openings to allow light to pass up to the ceiling, and in others these openings had been glazed with diffusing glass to get diffused light on the ceiling. It was also old to put diffusing globes around incandescent bulbs.

These three last mentioned principal elements of the patent in suit (incandescent bulb or other light source, diffusing

globe and metal reflector with openings therein) had been used in combination in the prior art, but they had not accomplished the complete results which the patentees of the patent in suit accomplished by their rearrangement and recombination of these elements. Simple and relatively inexpensive as this was, it certainly was not obvious, as this is a crowded art and not much advance is possible; but all those patentees were skilled in the art and engaged in its development, and no one prior to the patentees of the patent in suit had even suggested the possibility of removing the difficulties which confronted the patentees, by the use of the combination of the patent in suit.

By the arrangement of the patent in suit, which I have hereinbefore described, the diffusing globe became the effective or secondary light source, and the light passing through the openings in the reflector to the ceiling, at points below the upper edge of the diffusing globe, is diffused and results in a soft, uniform illumination of a large area of the ceiling above the reflector.

While in practice the reflector is carried well down around the globe, it cannot be carried down so far that the lighted globe cannot be seen as the unit is approached by one walking along a shop aisle.

The large size of the globe correspondingly reduces its brilliancy, and the globe and the light thrown downward on the working plane do not violently contrast with the illuminated ceiling above.

We now come to a consideration of the prior art.

Defendants place their principal reliance on patent No. 1,083,750, to Little, issued January 6, 1914. That patent expired January 6, 1931, and is therefore open to use by the defendants, but notwithstanding that fact, defendants prefer to use the invention of the patent in suit.

Although the drawings show a Welsbach burner, the patent says that electric lamps may be used.

A metal shade is shown, with openings around its upper part, through which light may pass to the ceiling.

In his specification the patentee says: "Glass or other transparent or translucent material may be used in the holes of the reflector or shade."

In other words, what Little teaches is that if diffused light through the reflector openings is wanted, they obtain it by placing translucent glass in the holes.

That is not the teaching of the patent in suit but rather the teaching of patent No. 1,345,796, to Minor, and patent No. 1,381,-103, to Blackwell.

In the face of the teaching of the Little patent as I have described it, I can find no real foundation for the argument of obviousness, based on the presence, in the Little drawing only, shown by dotted lines, of the ordinary chimney found in every Welsbach burner, because of the necessity to protect the fragile Welsbach mantle from any substantial air currents. There is no mention of that chimney in the specification.

The chimney so shown by dotted lines as crystal glass, that is, plain non-diffusing glass, has the customary pair of holes near its bottom, to admit air for combustion of gas necessary in such a burner.

Notwithstanding the testimony of defendants' expert that "a great many opal cylinders were sold by the Welsbach Company for lights for this purpose," he does not say nor is there any evidence which shows that an opal glass chimney was ever used in the Little structure.

It seems obvious to me that if Little, who was skilled in the art, even thought of the Welsbach chimney as a secondary light source, instead of merely a necessary protective covering for the fragile mantle, as it was generally considered in that art, he would have described it in his specification as being adapted to accomplish the purpose of his invention, instead of relying solely on the use of glass or other transparent or translucent materials in the holes of the reflector or shade.

Further, even if any opal glass chimney had been used by Little, the result would not have been that of the invention of the patent in suit.

This is shown by defendants' witness Litner, who said that in defendants' unit, he took out the large diffusing globe, and substituted for the usual clear glass incandescent bulb, one having a frosted glass wall, and that this gave a direct reproduction of the holes in the reflector on the ceiling, the outlines being dim.

The sum total of the testimony of the defendants' expert was that in order to ob-

tain the same effect as the patent in suit, it would be necessary to do more than substitute opal glass for clear glass in the chimney of Little, that is, it would be necessary to enlarge the chimney until it occupies the same relation to the reflector openings as is found in the patented structure.

There is no such suggestion in the Little patent, and without some teaching to that effect, it would not be done by the man skilled in the art.

*Patent No. 1,397,274, to Firman.* That patent was cited in the file-wrapper of the patent in suit. It shows a globe of translucent material, with an opening in the bottom.

A small hole not described in the patent, of which there probably were three, is shown in the top of the reflector. Their purpose was to permit air entering the bottom hole to pass out of the globe. Substantially all of the light which would pass through those holes in the reflector would be direct light.

The Firman unit has neither the function nor structure of the patent in suit.

The opinion of Circuit Judge Mack, sitting as District Judge, in Edison Fixture Co., Inc., v. Isaac Eisner, doing business as the New York Gas Lighting Co., in the Southern District of New York, Equity No. 26—166,[1] does not seem to be in point, as the facts as stated in his opinion differ widely from the facts in the instant suit.

*Patent No. 412,089, to Hawkes.* This patent shows a globe and a metal reflector, but no openings are provided in this metal reflector.

Even if as defendants' expert said, the globe "could very readily be a light diffusing glass", and was so made, it would not contain the invention of the patent in suit.

*Patent No. 1,193,520, to Crownfield.* This patent says: "The shade 12 may be made of opaque, or translucent, or partially translucent material, and in any event will reflect light reaching it from the lamp L downwardly in a concentrated zone below the fixture. If the shade is translucent the light rays will in part pass through the shade, producing in a limited degree a general diffusion of light throughout the room, and in part be reflected downward from its under surface in a concentrated area."

This does not even suggest the invention of the patent in suit, in which the structure includes an opaque shade with provision by which diffused light may be passed to the ceiling.

*Patent No. 1,194,178, to Herwig.* Defendants cite this patent merely to show the support of a globe by means of set screws passing through the reflector.

Such use of set screws is common, and while they are defined in claim 1 of the patent in suit as "supporting means engaging said globe through said reflector", they are neither an essential nor even important part in the inventive idea.

*Patent No. 1,230,046, to Smith.* The shade of this patent is made opaque if the light is all to be thrown downward, but, if it is of translucent material, then the rays passing upward through the upper portion of the globe will be diffused and distributed on the ceiling, without the production of halations, inasmuch as the diffused light casts upon the ceiling no shadows of intervening objects. The lower part of the globe 20 is stippled in the drawing, indicating some kind of frosting or enameling.

The diffusion of light upward in that patent could be obtained only by having a glass shade or reflector, which would be undesirable in industrial lighting.

*Gebrauchs-Muster No. 791,845, German.* Waiving the question whether a Gebrauchs-Muster is or is not a patent within the meaning of our statute, it provides that if the reflector is of metal, holes might be provided in it to permit light to be transmitted to the ceiling; but it certainly taught nothing of the invention of the patent in suit, as the drawing shows that any light which passes through the holes is direct light and not diffused light.

*Patent No. 1,235,951, to Wohlauer.* This patent is cited by defendants as another illustration of the common practice of supporting the globe by means of screws that went through the reflector, and as mentioning a refracting or diffusing shade.

*Patent No. 1,239,556, to Beardslee.* This patent shows a reflector 21, and a globe 23 made of light diffusing material, and states that the reflector 21 is preferably made of translucent material adapted to reflect downwardly the direct rays of light issued from the lamp 16, as well as to diffuse the light above and to the sides.

*Patent No. 1,345,796, to Minor,* was assigned to the General Electric Company, and is now owned by plaintiff.

---

[1] No opinion for publication.

The application was filed March 15, 1919, and the patent issued July 6, 1920.

The structure shows a metallic reflector having openings in it to permit the light from the light source to pass to the ceiling, in order to diffuse this light over the ceiling, the openings being glazed with translucent glass. The form of Fig. 2 is possibly the simplest of the three forms shown. The reflector 3 is secured to a heel 5 by a number of metal straps 2 and a glass sleeve 1 is placed over the opening between the heel and the reflector. This arrangement is the equivalent of a series of openings in the reflector, with a glass pane in each opening. The light source was an incandescent bulb with plain glass. Possibly two years after the device was placed on the market, the structure was modified by placing the translucent glass inside and holding it by spring metal clips, instead of the glass being outside of the unit.

The device of the Minor patent was placed on the market by the General Electric Company, but after the appearance of the unit of the patent in suit, its manufacture continued only in a very small way, and plaintiff has, since it acquired that patent, continued its manufacture in the same small way, having discontinued its manufacture for a period of years and then brought it back again.

In the last three years plaintiff has made and sold only 1341 of these units, although it is considerably cheaper than the Glassteel units made under the patent in suit, of which large numbers have been made and sold.

While the Minor patent would give a diffused light on the ceiling, eye fatigue would still occur, as the visible source of the light is too brilliant, and the patent contains no teaching which would overcome that disadvantage.

*Patent No. 1,381,103, to Blackwell.* This patent was granted to Westinghouse Lamp Company, June 14, 1921, on an application filed March 27, 1919. The structure shown is very similar to that of Fig. 1 of the Minor patent.

The reflector is made up of an upper and a lower metallic member, spaced apart with a sleeve 2 of diffusing glass over the space.

That there was a problem which the two large companies were trying to solve is shown by the Minor and Blackwell patents, in which the problem is pointed out, and that they did not completely solve that problem is shown by the fact that they have been substantially displaced by the higher-priced arrangement of the patent in suit.

No one of the patents offered in evidence by the defendants anticipates the patent in suit.

It is not disputed that to show invalidity, it is not necessary to find all of the elements in one prior art patent. The question in this case where the elements are old, is whether there is any teaching in the prior art to warrant the court in holding that any man skilled in the art could bring such old elements together to form the patented combination.

With a very large number of patents to choose from, for this is a very crowded art, the defendants have confined themselves to the very small number which I have referred to herein; and I cannot find any teaching in the prior art which would lead one skilled in the art to bring the old elements together to form the patented combination, and no one solved the problem before the patentees of the patent in suit.

The patented combination has filled a long felt want.

The contention of the defendants that the language of the claims might be interpreted so as to broaden them beyond the disclosure or the plain meaning of the claims in the disclosure, is not sustained.

Plaintiff is not asking for anything more than the plain and obvious meaning of the claims in suit, without any broadening beyond the specific disclosure in the drawings and the specification, and the patentee did not estop himself as to such interpretation, therefore recourse to the file-wrapper is not permissible.

Defendants seem to make a point of whether patentees' structure allows transmission of a "substantial" portion of light to the ceiling, as stated in claim 1.

One of the stated objects of the invention being to provide an illumination for the ceiling for the purposes stated, "substantial", as used in said claim, meant sufficient for that purpose, and it seems to me that 10% would be sufficient for that purpose.

Plaintiff offered in evidence a number of prior art patents, which defendants had cited but had not offered, to illustrate the art and be edifying to me, but I see no reason for any consideration of them, as defendants offered those which they considered the best ones.

The patent in suit is valid and infringed.

A decree may be entered in favor of the plaintiff against the defendants, for an injunction, accounting, damages and costs, with the usual order of reference.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, in accordance with Rule 11 of the Equity Rules of this court.