GENERAL ELECTRIC CO. v. HYGRADE SYLVANIA CORPORATION et al.

District Court, S. D. New York.

Dec. 22, 1944.

540

Alexander C. Neave, of New York City (John H. Anderson, of Cleveland, Ohio, and Rowland V. Patrick, of Boston, Mass., of counsel), for plaintiff.

Gifford, Scull & Burgess, of New York City (Newton A. Burgess, of New York City, of counsel), for defendant Hygrade Sylvania Corporation.

LEIBELL, District Judge.

In an opinion, filed July 7, 1944, 61 F. Supp. 531 I ruled upon certain motions made by the defendant, Hygrade Sylvania Corporation, for leave to amend its amended answer by adding two new defenses, and for two additional Findings of Fact and two further Conclusions of Law under the proposed amendments. I denied motions 1, 3 and 5, all of which related to defendant's allegation that the plaintiff was barred from any relief under both the Hull and the Meyer et al patents because plaintiff had "misused the Hull patent in an effort to control competition in unpatented devices." In respect to the second group of defendant's motions (Nos. 2, 4 and 6), I ruled that defendant might amend its amended answer by pleading as a special defense "an estoppel to disclaim" (Motion No. 2), and I denied without prejudice defendant's motions Nos. 4 and 6 for a Finding of Fact and Conclusion of Law based on said defense. At the same time counsel were extended an opportunity to have the case reopened "to receive such evidence as the parties may wish to offer on the issues raised by this new defense of estoppel"; but both sides decided "to rest their case as to this defense, on what appears in Exhibit K and in the addition of August 11, 1925 to French patent #589,856." In October defendant Hygrade formally filed the amendment to its amended answer, as set forth in its motion No. 2, and the parties have submitted their briefs on the questions presented by defendant Hygrade's motions Nos. 4 and 6.

The proposed amendment, pleading estoppel to disclaim, is quoted in my opinion of July 7, 1944. Likewise quoted therein are Findings of Fact Nos. 23 and 24 (see footnote [1]) from my decision of March 30, 1944, 61 F.Supp. 476, and two paragraphs of my opinion of that date (March 30, 1944) —all relating to the abandonment by Meyer et al., for part of the time their patent was pending, of any claim to the use of luminescent or fluorescent material in connection with their invention of an electric discharge lamp that gave off ultra violet rays. On this question of abandonment, there were references in my opinion of July 7, 1944, to the history of the Meyer et al patent (#2,-182,732) in the Patent Office, as disclosed

---

[1] 23. The combination of elements defined in claims 6, 13, 25 and 27 of said Meyer, Spanner and Germer patent was not disclosed in the prior art, was new and useful. Claims 6 and 25 involved invention on the part of Meyer, Spanner and Germer: so did claims 13 and 27, except for their concluding clauses referring to "luminescent material" and "fluorescent material", respectively.

24. The idea of luminescent or fluorescent material as an element of the patent specification and claims was abandoned by Meyer August 28, 1928. It was restored to the specification Oct. 12, 1932; but no claims including any reference to luminescent or fluorescent material were re-asserted until claims 13 and 27 were added in October and November 1939. Meanwhile the rights of the public intervened, through the sale of over several million General Electric fluorescent lamps in 1938 and 1939.

by the file wrapper, Exhibit K. I also discussed in said opinion, the German patent #308,488, and French patent #589,856 and the Addition thereto of August 11, 1925, which had been cited by the Patent Examiner June 22, 1928 when he rejected practically all of the claims set forth in the original Meyer application of December 19, 1927, including old claims 16 and 17. No claim containing as an element the use of luminescent or fluorescent material was again made part of the Meyer application until October 31, 1939, and November 2, 1939, when the application was amended to include claims 13 and 27 of the Meyer patent as issued December 5, 1939. Plaintiff, General Electric Company, had purchased the rights to the Meyer patent application in May 1939.

The specification of the original Meyer patent application of December 19, 1927 had contained a reference to the use of a coating or jacket of fluorescent material, so that the ultra violet lamp could "also be used with advantage for advertising purposes." Although this reference was eliminated from the specification by an amendment of August 28, 1928, it was restored thereto on October 12, 1932, when the original specification was reinstated in full. It thereafter remained in the specification until the Meyer patent was issued. In fact, on November 2, 1939, the General Electric Company, then the owner of the Meyer patent application, added to the specification the following sentence: "The fluorescent material may be enclosed in said envelope" i. e. the ultra violet lamp tube.

The following is quoted from my opinion of July 7, 1944, 61 F.Supp. 538:

"The law in relation to 'disclaimers' in patent cases was discussed by Chief Justice Stone in Marconi Wireless Telegraph Co. v. United States, 320 U.S. 1 at pages 57-59, 63 S.Ct. 1393, at page 1419, 87 L.Ed. 1731. In referring to the provisions of the statute (35 U.S.C.A. §§ 65, 71) and the conduct of a patentee, Fleming, in relation to certain claims of his patent and the delay in filing a disclaimer thereof, the Chief Justice in effect stated that if Fleming claimed as his invention something that he knew was old, the specified claims would be invalid and the invalidity would defeat the entire patent 'unless the invalid portion had been claimed "through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention," and was also disclaimed without "unreasonable"

neglect or delay.' And the Chief Justice remarked that 'Both of these are questions of fact' for the Court to decide."

Plaintiff, as the purchaser of the rights under the Meyer patent application is chargeable with notice of the file wrapper contents. On the present issue plaintiff's position does not differ from that of Meyer and his associates, assuming that they had continued on as the owners of the application down to the date the patent was issued, and that they themselves had amended the application by adding thereto claims 13 and 27 on October 31, 1939 and November 2, 1939. If Meyer et al would have been barred by concessions or admissions in the file wrapper from adding claims 13 and 27, their assignee, General Electric, was likewise barred. The fact that General Electric had developed fluorescent lamps and had been selling them to the public since April 1938 would not give General Electric any greater right to add those two claims to the Meyer application. It was the Meyer et al invention that was patented, regardless of who was the assignee to whom the patent was actually issued.

On these present motions (Nos. 4 and 6) it is the contention of defendant Hygrade that the addition of claims Nos. 13 and 27, containing a combination of luminescent or fluorescent material with the Meyer et al mercury vapor lamp, rendered the entire Meyer et al patent invalid in view of its file wrapper history. A conclusion of law to that effect is sought by motion No. 6. In Conclusion of Law No. 3 of the decision of March 30, 1944, I had held that claims 13 and 27 were good if the reference to luminescent or fluorescent material were eliminated—

"3. Meyer, Spanner and Germer patent No. 2,182,732 is valid as to claims 6 and 25; and is valid as to claim 13, if the concluding clause 'and luminescent material enclosed in said vessel' is struck out; and is valid as to claim 27, if the concluding clause 'and fluorescent material disposed in the path of said spectral ray emission' is struck out."

Plaintiff, General Electric Company, argues that it still has time to file a disclaimer, if it deems that course proper, and that it has the right to seek a review of any decree that may be entered herein which may give effect to Conclusion of Law No. 3. To this the defendant Hygrade rejoins that plaintiff's conduct, in adding claims 13 and

27 in the face of the File Wrapper contents, was such that plaintiff is estopped to disclaim and that this Court should so hold and should now declare the Meyer et al patent totally invalid. The effect of such a holding would be to strike down claim 6, heretofore declared valid by the United States Court of Appeals for the District of Columbia in the suit of Electrons Inc. et al v. Coe, 69 App. D.C. 181, 99 F.2d 414, and also claim 25, neither of which contains any reference to luminescent or fluorescent material.

 In considering these contentions, we start with the general proposition that the applicant for a patent is not barred from restoring to his patent application, before the patent is issued, any claim which he might theretofore have cancelled, even if the cancellation was made because of citations of the prior art. Ex parte Collins, 44 U.S.P.Q. 82, 84. If the patent applicant has admitted the invalidity of the claim theretofore cancelled and later restores the claim to the patent application and the claim is in fact invalid for the reasons stated in the patentee's admission, then he is estopped to file a disclaimer after the patent is issued with the restored claim as a part thereof. The reason for the estoppel is that awareness of invalidity has been so manifestly brought home to the patentee, that he has obtained his patent on the false representation that he was the first inventor of the subject matter of the claim. Fraud seems to have been the basis for imposing the penalty of a forfeiture of the entire patent in cases where estoppel to disclaim has been sustained, as in Marconi Wireless v. United States, supra.

The disclaimer statute, 35 U.S.C.A. §§ 65, 71, provides in part:

§ 65. "Whenever, through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, a patentee has claimed more than that of which he was the original or first inventor or discoverer, his patent shall be valid for all that part which is truly and justly his own, provided the same is a material or substantial part of the thing patented; and any such patentee, his heirs or assigns, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of such parts of the thing patented as he shall not choose to claim or to hold by virtue of the patent or assignment, stating therein the extent of his interest in such patent. * * *"

Section 71 supplements Section 65, and provides:

"§ 71. Suit for infringement where specification too broad

"Whenever, through inadvertence, accident, or mistake, and without any willful default or intent to defraud or mislead the public, a patentee has, in his specification, claimed to be the original and first inventor or discoverer of any material or substantial part of the thing patented, of which he was not the original and first inventor or discoverer, every such patentee, his executors, administrators, and assigns, whether of the whole or any sectional interest in the patent, may maintain a suit at law or in equity, for the infringement of any part thereof, which was bona fide his own, if it is a material and substantial part of the thing patented, and definitely distinguishable from the parts claimed without right, notwithstanding the specifications may embrace more than that of which the patentee was the first inventor or discoverer. But in every such case in which a judgment or decree shall be rendered for the plaintiff no costs shall be recovered unless the proper disclaimer has been entered at the Patent Office before the commencement of the suit. But no patentee shall be entitled to the benefits of this section if he has unreasonably neglected or delayed to enter a disclaimer. R.S. § 4922."

 These enactments were intended to be remedial—to remove the harsh and inexorable rule of the common law theretofore applied, that if one claim of a patent was invalid, the whole patent was void. Hailes v. Albany Stove Co., 123 U.S. 582, 8 S.Ct. 262, 31 L.Ed. 284.

In the present case the defendant Hygrade does not charge that claims 13 and 27 were added to the Meyer patent application October 31st and November 2nd, 1939, with "any fraudulent or deceptive intention." Defendant does argue however that the Addition was not made "through inadvertence, accident or mistake." Clearly it was not done through inadvertence or accident. The two claims in question were deliberately added to the patent application. And they were added for the purpose of strengthening General Electric's patent position for fluorescent lamps, as I stated in my opinion of March 30, 1944. There was no mistake of fact as to what the file wrapper contained. Plaintiff answers that if there was a mistake in adding these two claims (which it denies) it was a mistake of law, and that "the present issue is solely

one of what and how clear the law of invalidity was at the time of insertion of the claims."

Before discussing this point, we should note two things. In the first place, the applicants' attorney in his "Remarks" of August, 1928, stated: "In cancelling the remaining claims (which included old claims 16 and 17), applicants have not done so because of the art cited, but for an opportunity to rewrite the claims to overcome the formal objections thereto and to more clearly and specifically set forth the features of the invention to aid in differentiating from the art cited." He also stated: "The matter of luminosity is not specifically made a feature of the claim as rewritten" and that "this feature per se is not made a part of the rewritten claims."

As I noted in my opinion of July 7, 1944, the German patent #308,488, as set forth in Exhibit K-1, made no reference to the use of any luminescent or fluorescent material. It seems to me that the Examiner mistakenly cited that patent as part of the prior art and that the applicants' then attorney mistakenly thought that the citation referred to "the use of luminous substances in discharge tubes." In discussing the French patent 589,856 the then attorney for the applicant made the following statement in his "Remarks" of August 28, 1928:

"This patent [French patent 589,856] however, throws considerable light upon the general relation of the art cited to the invention of applicants. 'As before pointed out, all of the art cited broadly against the feature of the production of ultraviolet rays is limited to the matter of producing light for illumination purposes, and none of it makes any use of the incidental production interiorally of the envelope of ultraviolet rays, except French patent 589856, and the use made of it in this patent clearly points out the great difference between the invention of applicants and the art cited. Commencing at line 22 and continuing through line 36, page 1, the French patent makes clear that that part of the energy in the lamps which goes towards the production of ultraviolet rays is a loss in the matter of illumination, and the patent proposes the unique features of converting the energy of this ultraviolet ray component from its invisible frequency to a visible frequency by the use of luminous substances, thereby saving this energy for useful application to the specific purpose to which the lamps of all of the references are directed. This pointedly brings out that applicants are now taking a component which in the other lamps cited was a detriment and are putting this component to a useful end in a specific and practical way, and that the mere incidental production of ultraviolet rays in illuminating lamps with no provision made for the use of these rays exteriorly of the lamp is not sufficient to anticipate the most useful invention of the present application of applicants."

In my opinion of July 7, 1944, I discussed the specification and claim made in the "Addition" to the French patent, in respect to the "tube having a glass wall which contains a fluorescent substance." I need not repeat it here. The present motion comes down to this: Assuming that the Meyer applicants had themselves added claims 13 and 27 of the Meyer et al patent, could they have later properly disclaimed these two claims or the luminescent features thereof, on the ground that the addition of the luminescent feature was made through a mistake of law? General Electric says that could have been done, despite the above quoted August 1928 statement of the applicants' attorney.

Does the abandonment, for part of the period while a patent is pending, of a claim embodying the use of the patented device in combination with a substance bar the reassertion of that claim before the patent has isused—if public rights have not intervened? I believe that the answer is "no." If public rights have intervened, does the reassertion of the abandoned claim before the patent is issued bar a disclaimer of the reasserted claim if the disclaimer is filed within a reasonable time after the final judicial determination of the invalidity of the claim? I believe that depends on the facts and circumstances of each case. Just what is the element that brings upon the applicant the heavy penalty of forfeiture of the entire patent? There must be something more than abandonment plus intervening public rights. There must be a clear consciousness on the part of the applicant that he was not the first inventor, which implies that the applicant knew that some one else was the first inventor, plus the further fact that the some one else actually was the first inventor. The awareness that the applicant was not the first inventor must be clearly shown by the person who raises the special defense of estoppel. Assuming that Meyer et al. are bound by the

statements in the "Remarks" of their attorney filed August 28, 1928, to which reference has been made above, those remarks did not contain an admission that the applicants were not the inventors of the use of a luminescent or fluorescent material with their particular type of electrical discharge device. Nor did those "Remarks" contain any admission that the holder of the French patent was the first inventor of an electrical discharge device that utilized ultra violet rays in connection with fluorescent matter.

There was no admission that the Frenchman's electrical discharge device was the same as Meyers. Nor was it the same in fact. The only admission was that the Frenchman's device for the production of a column of visible light had the unique feature of including fluorescent substance in the tube wall so as to utilize in the production of visible light the by-product of ultra violet rays that otherwise would be wasted.

I am not satisfied that the Meyer applicants could not have succeeded in an interference proceeding with the French patent, if they had cared to thus meet the issue. But if they had permitted their patent to issue without reasserting the claim, they could not have obtained it by an application for a reissue patent, even though the Examiner's ruling was erroneous. But here the claim was reasserted before the Meyer patent was issued and the claim was allowed. That is something very different from any of the cases cited by defendant.

I stated in my opinion filed March 30, 1944, 61 F.Supp. 571:

"It had been known prior to Meyer's application that ultra-violet rays, falling on certain substances, cause them to fluoresce. With the discovery of a tubular ultra-violet lamp, operating on A. C. house current, there would be no invention in using an ordinary glass tube to keep the rays within the tube and coating the tube interiorly with a fluorescent material. Meyer did mention such coatings and that the lamp could then be used with advantage for advertising purposes. But you first had to have the lamp. Conceding that the Meyer applicants abandoned for about eleven years that part of their claims relating to the use of luminescent or fluorescent material, that would not bar them or their successors from establishing infringement of their patent if any one used a lamp of the same interior construction and gaseous filling as their germicidal lamp and coated the tube with fluorescent material."

That brings me to a consideration of a point made by plaintiff's attorney, namely, that the most the plaintiff can be charged with is that plaintiff reinstated the abandoned claim through a mistake as to the law. And to that they add, that with all due regard for the decision I rendered March 30th, they believe that it is incorrect in the legal consequences it applied when disposing of the issue of abandonment. In support of their argument that if there was a mistake of law it was excusable (the kind of a mistake the disclaimer statute relieved from the penalty of forfeiture of the entire patent) plaintiff's attorneys assert: (1) That the patent office on the same record made the same mistake when they issued the patent; and (2) that the defendant's numerous counsel did not note the mistake although they too examined the file wrapper (Ex. K) of the Meyer patent and never raised the defense of estoppel to disclaim until four years after the patent suit was started; (3) that this Court in its first opinion, after studying the Meyer patent file wrapper did not rule that the entire patent was invalid on the ground that plaintiff was estopped to disclaim those parts of claims 13 and 27 relating to the use of luminescent or fluorescent material; and (4) that there has not been found in all the research of counsel any case that upheld the defendant's contention on any set of facts at all resembling those here presented on this issue. Plaintiff urges that the addition of claims 13 and 27 was made without any consciousness that the claims were or would be held invalid because of abandonment or for any other reason. In France Mfg. Co. v. Jefferson Elec. Co., 6 Cir., 106 F.2d 605, 610, the court held:

"The duty to disclaim begins when knowledge is brought home to the owner of the patent that the inventor * * * was not the first to disclose the particular thing claimed. * * * If, however, there is a reasonable ground for difference of opinion as to whether the prior patent, prior use or disclosure so brought home to the knowledge of the patentee or his assignee, really negatives the novelty of anything claimed by him, the duty to disclaim will not arise until that question is judicially determined."

See, also Cincinnati Rubber Mfg. Co. v. Stowe-Woodward Inc., 6 Cir., 111 F.2d 239,

243, and Barnes Co. v. International Harvester Co., D.C., 51 F.Supp. 254, 267.

. The disclaimer statute does not say that the "mistake" must be a mistake of fact and not a mistake of law. Freeman v. Altvater, 8 Cir., 138 F.2d 854. There is no fraud involved in asserting a claim for which there is a reasonable basis. In fact the cases where the disclaimer statute has not been permitted to relieve the applicant from the penalty of the loss of his entire patent are those where his original assertion of the claim was fraudulent (Sessions v. Romadka, 145 U.S. 29, 12 S.Ct. 799, 36 L.Ed. 609) or cases in which after he became aware that he was not the first inventor of a claim set forth in his issued patent, he delayed an unreasonable time in filing a disclaimer in the patent office to limit his patent to that of which he was the first inventor. I am of the opinion that plaintiff is not estopped to disclaim and may take advantage of the disclaimer statute within a reasonable time after the decision of the last appellate court that rules upon the decree to be entered on my decision of March 30, 1944. See, Clair et al v. Kastar, Inc., 2 Cir., 138 F.2d 828.

Defendant Hygrade's motions Nos. 4 and 6 are accordingly denied.

Settle order on two days' notice.