**SHINGLE PRODUCT PATENTS, Inc.**

v.

**GLEASON et al.**

No. 13367.

United States Court of Appeals
Ninth Circuit.

March 12, 1954.

Rehearing Denied April 29, 1954.

438

Mason & Graham, Collins Mason, William R. Graham, Los Angeles, Cal., for appellant.

Fulwider & Mattingly, Walter P. Huntley, Robert B. Fulwider, Los Angeles, Cal., for appellee.

Before STEPHENS, ORR, and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Shingle Product Patents, Inc., as assignee of Herbert L. Owens' Patent No. 2,259,962, relating to a preformed wood shingle unit for use in finishing or trimming the ridges and hips of pitched roofs, and as assignee of Owens' Patent No. 2,346,450, relating to a particularly arranged package or bundle of such units, brought suit against Charles H. Gleason, Marty Coker, and Trim Products Company for infringement of patents in suit. In their answer, defendants challenged the validity of the patents in suit and filed a counter-claim for unfair competition.

After trial was had on the issues raised, the district court found all of the claims of both patents invalid[1] and no unfair competition. The court awarded defendants $5,000 as a reasonable attorney's fee. There is evidence that the attorney's fees paid were in excess of $8,000. Plaintiff appealed from only so much of the judgment as related to the validity of claims 6 through 10 of Patent No. 2,259,962, and from the award of attorney's fees.

On June 2, 1952, plaintiff filed with the Patent Office a disclaimer of Claim 2 of Patent No. 2,346,450, and on October 6, 1952, plaintiff disclaimed Claims 1 through 5 of Patent No. 2,259,962.

The issues in this case were all met prior to January 1, 1953, the effective date of Revised Title 35 U.S.C.A., relating to patents. Therefore, this case must be decided upon the basis of old Title 35 U.S.C.A., and all references herein, unless otherwise indicated, are to old Title 35 U.S.C.A.

On October 10, 1952, defendants filed with this court a motion to dismiss the appeal on the ground that plaintiff's disclaimer amounted to an admission that the patent claims were broader than the invention and that since the disclaimer was not made within a reasonable time after plaintiff knew or should have known that the claims were invalid, the entire patents were voided thereby.

The general rule applicable during the period encompassed in the instant matter[2] was that a patent which was invalid in one of its material claims was wholly void. Ensten v. Simon, Ascher & Co., 1931, 282 U.S. 445, 452, 51 S.Ct. 207, 75 L.Ed. 453. Congress acted to aid the inventor who had acted in good faith and without intention to mislead the public, by permitting him to avoid the harsh consequences of the referred to general rule if he promptly met the prescribed conditions for the disclaimer. Title 35 U.S.C.A. former §§ 65, 71; but cf. Revised Title 35 U.S.C.A. §§ 253, 288; Hailes v. Albany Stove Co., 1887, 123 U.S. 582, 589, 8 S.Ct. 262, 31 L.Ed. 284; Ensten v. Simon, Ascher & Co., 1931, 282 U.S. 445, 452, 51 S.Ct. 207, 75 L.Ed. 453, and Marconi Wireless

1. Patent No. 2,259,962 contained 10 claims; Patent No. 2,346,450 contained 2 claims.

2. But repealed in Revised Title 35 U.S.C.A. § 253.

Co. v. United States, 1943, 320 U.S. 1, 58, 63 S.Ct. 1393, 87 L.Ed. 1731. See, also. Otis Elevator Co. v. Pacific Finance Corp., 9 Cir., 1934, 68 F.2d 664, for an analysis of the history of disclaimer. Plaintiff was entitled to a reasonable period in which to study the patent in order to determine whether or not to persist in all of its claims or to disclaim some of them as untenable. No exact time within which a disclaimer must be made can be fixed. See Triplett v. Lowell, 1936, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949. See, also, General Chemical Co. v. Standard Wholesale Phosphate & Acid Works, Inc., 4 Cir., 1935, 77 F.2d 230. Cf. Marconi Wireless Telegraph Co. v. United States, 1943, 320 U.S. 1, 57–58, 63 S.Ct. 1393, 87 L.Ed. 1731.

Plaintiff's attorney mailed the disclaimer in Patent No. 2,259,962 to the the Patent Office on August 12, 1952, a little over three months after it had been determined, as indicated by its statement of points on appeal filed with this court on May 5, 1952, to pursue only claims 6 through 10. The Patent Office did not file the disclaimer until October 6, 1952, because plaintiff's attorney inadvertently failed to include the $10.00 filing fee until the latter date. The later filing date is not conclusive in the circumstances since plaintiff's intent to disclaim was made manifest within a reasonable time.

Furthermore, among the bases for the district court's holding that Patent No. 2,259,962 was invalid were the findings and conclusion that plaintiff failed to file a timely disclaimer as to the material parts of his claimed invention which plaintiff knew to have been disclosed in the Jackson Patent No. 1,313,989.[3] Thus, the question of timely disclaimer is in issue in the appeal. Therefore, the motion to dismiss so much of the appeal as relates to the validity of the patents for failure to make a timely disclaimer, is denied.

We first turn our attention to the validity of claims 6 through 10 of Patent No. 2,259,962.[4] The district court found that prior to the marketing of plaintiff-appellant's alleged invention, the ridges and hips of pitched roofs to which wooden shingles were applied were finished in the following relatively laborious and expensive manner:

"It was common practice long prior to February 13, 1938, to finish the hips and ridges of shingled roofs in this country by attaching thereto a plurality of pairs of trim shingles, the shingles of each pair being attached to the roof on opposite sides of the hips and ridges, the pairs being attached in longitudinally staggered and overlapping relation and alternated as 'rights' and 'lefts', the pairs each comprising two wooden shingles longitudinally tapered in thickness and arranged edge to edge in angular relation to each other with the margin of the thickened edge portion of one of the shingles overlying and abutting a margin of the thickened end portion of the other shingle, the shingles of each pair being secured to the roof on opposite sides of the hip or ridge, and the shingles of each pair being joined to each other by nails driven though the face of one shingle into the edge of the other. In this practice, which was known in the trade as 'lacing' a hip or ridge, the first *shingle of a pair was nailed in place* on the roof and then trimmed with a hatchet at its upper edge to provide a beveled edge intended to abut the *underside of the other shingle of* the pair. The second shingle of the pair was then nailed in place and trimmed to provide a beveled edge coplanar with the upper surface of the shingle first laid. The nails used to join the two shingles to each other were driven after both

---

3. See Findings of Fact 20, 21, 22, 23 and Conclusions of Law IX.

4. As pointed out above, plaintiff-appellant has disclaimed Claims 1 through 5 of Patent No. 2,259,962.

shingles were nailed in place and trimmed." Findings of Fact 4, Record on Appeal.

Plaintiff-appellant claims that the patentable novelty in his claims 6 through 10 "is found in the concept of pre-forming ridge trim units each composed of a pair of V-arranged wood shingles whose thick marginal abutting portions are secured together by means of metallic staples driven into the two shingles astride the joint therebetween, so that the staples serve the multiple purpose of positively holding the shingles together while expansion of the roof tends to separate them, of providing a flexible hinge which permits relative angular adjustment of the shingles to fit roofs of different pitches without imposing any splitting stress upon the shingles, and of materially reducing the cost of pre-forming the units, as well as of substantially reducing the labor cost of trimming hip and ridges with wood shingles." Appellant's opening brief, page 4.

The record shows that the pre-shaping or beveling of wood shingles prior to nailing them in place on the roof, if invention it is, has been disclosed by the Dressel Patent No. 2,314,036, filed July 24, 1939, as well as by Perkins Patent No. 2,201,917, filed May 26, 1939.[5] The concept of pre-joining left and right[6] shaped shingles was also known in the art prior to the Owens patents. See, e. g., Jackson Patent No. 1,313,989, which disclosed how two slate shingles could be hinged to facilitate the finishing of roof ridges. The application or extension to wood ridge trim units of the concept of pre-joining slate ridge trim units does not constitute invention.

■ Plaintiff-appellant lays stress in its argument, in support of the validity of its patent, on its disclosure of the use of a metallic staple as both the medium through which the shingles are joined, and as a "flexible hinge." The use of a metallic staple to fasten together two wood surfaces has long been known. See Burt Patent No. 359,344;[7] Austrian Patent No. 96,128.[8] To describe the use of the staple as analogous to that of a hinge is somewhat inaccurate. It is not intended that the staple be subject to constant swinging or bending back and forth as would a door hinge, but only that it be subject to be bent to fit the pitch angle of the particular roof to which the shingle unit is to be affixed. The elasticity of a metal staple which enables it to be bent to a desired angle is an inherent property of the metal staple and moreover was disclosed in the Burt Patent, supra. That property is, therefore, not an additional unsuspected merit in a patented device which would inure to the benefit of the patentee. Cf. Mead-Morrison Mfg. Co. v. Exeter Machine Works, 3 Cir., 1915, 225 F. 489, 496, 497.

■■ The evidence supports the district court's findings of fact to the effect that claims 6 through 10 of the Owens' Patent No. 2,259,962 do not define a patentable combination. As was said in Lincoln Engineering Co. v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008, "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention."[9] Therefore, the district court's conclusions of law that claims 6 through 10 are invalid because the subject-matter has been anticipated and because the claims lack invention or novelty over the prior art, are not clearly erroneous.[10]

Since it is established that the Owens' Patent No. 2,259,962 is invalid, we need

5. Plaintiff-appellant's application was filed February 13, 1940.

6. The shingles are of different widths.

7. Issued March 15, 1887.

8. Issued November 14, 1922.

9. See, also, Great A. & P. Tea Co. v. Supermarket Equip. Corp., 1950, 340 U.S. 147, 151, 152, 71 S.Ct. 127, 95 L.Ed. 162.

10. Rule 52(a), Federal Rules of Civil Procedure, Title 28, U.S.C.A.

not consider the other findings of the district court as to the prior uses, new matter in claims 5, 7, 8, 9, and 10, plaintiff's failure to make timely disclaimer, or the findings and conclusions as to fraud and misrepresentation practiced upon the Patent Office in oaths filed in connection with the patent applications, and we make no expression thereon.

 The district court in the exercise of its discretion as authorized by statute [11] awarded defendants-appellees reasonable attorney's fees. As this court has pointed out in Park-In-Theatres v. Perkins, 9 Cir., 1951, 190 F.2d 137, 142, 143, "[t]he exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear."

The district court specifically found that plaintiff, and its officers and directors, knew or should have known that the patents were invalid and that they "commenced and prosecuted this action in bad faith, without justification, and without any reasonable belief in the merits of the claims alleged * * ." [12] As the basis for its finding of bad faith the court points out that plaintiff-appellant had knowledge of the Jackson, Burt, and Austrian patents and of the prior public uses of pre-formed wood shingle units in Oklahoma and California. The court also points out that plaintiff-appellant had brought other similar actions for infringement which it had settled and that at the time that this action was commenced, plaintiff-appellant had only the bare legal title to the patents involved, having been set up as an assetless corporation by the real parties in interest solely for the purpose of bringing harassing suits without liability to the real parties.

Where the district court has clearly stated the basis for its award of attorney's fees, this court may not interfere with the district court's exercise of discretion "except where there is an abuse of discretion amounting to caprice or an erroneous conception of law on the part of the trial judge." Dubil v. Rayford Camp & Co., 9 Cir., 1950, 184 F.2d 899, 903; Pacific Contact Laboratories v. Solex Laboratories, 9 Cir., 1953, 209 F.2d 529. We find no abuse of discretion in the district court's award of attorney's fees.

Affirmed.

---

11. Title 35 U.S.C.A. § 70. Cf. Revised Title 35 U.S.C.A. § 285.

12. Findings of Fact 40, 41.